**UNITED STATES of America, Appellee,**

v.

**John GONSALVES, Defendant, Appellant.**

**No. 81–1265.**

United States Court of Appeals, First Circuit.

Argued Nov. 2, 1981.

Decided Jan. 6, 1982.

Certiorari Denied March 29, 1982. See 102 S.Ct. 1759.

Steven A. Sussman, Watertown, Mass., by appointment of the Court, for appellant.

Robert B. Collings, First Asst. U. S. Atty., Chief, Crim. Div., Boston, Mass., with whom Edward F. Harrington, U. S. Atty., Boston, Mass., was on brief, for appellee.

Before CAMPBELL, BOWNES and BREYER, Circuit Judges.

CAMPBELL, Circuit Judge.

John Gonsalves appeals from his conviction of armed bank robbery under 18 U.S.C. § 2113(d). He contends that the district court erred in allowing into evidence a statement Gonsalves made to an FBI agent allegedly threatening a witness who had identified Gonsalves as the robber. Finding no abuse of discretion, we affirm both the district court's ruling and the conviction.

On January 6, 1981, the First Bank and Trust Company, a federally insured bank in Lowell, Massachusetts, was robbed when a man approached the "walk-up" window in the bank's outer lobby, showed the waiting teller a handgun tucked in his belt, and presented a written demand for all the teller's money. The robbery occurred at about five in the afternoon and took about three to four minutes to accomplish. Both the teller who turned over the money, Anna Morales, and another teller who was working near the walk-up window, Martha Mack, viewed the robber full-faced.

After the robber left, Morales told Mack what had happened; Mack pulled the rob-

bery alarm; and the tellers filled out bandit description forms while awaiting the arrival of the police. Within an hour, the two tellers were brought to the Lowell police station where they examined, simultaneously and in different rooms, four books of mugshots, each book containing approximately 50 pictures. Anna Morales selected only one photo from these books—that of John Gonsalves—stating as she did so "I think that's him." Martha Mack selected six photos, then narrowed her choice to one—also that of John Gonsalves. The two tellers subsequently identified Gonsalves in person as he sat in a Lowell courtroom on an unrelated matter and again at Gonsalves' trial for the First Bank and Trust Company robbery.

Gonsalves defended by producing three witnesses who stated that at around 5:00 p. m. on January 6 Gonsalves was helping to close up a machine shop in Lowell where he worked. Leon Nadeau, the owner of the shop and a director of the Massachusetts Equipment Dealers Association, stated that Gonsalves left the shop just before 5:00 p. m. with Jack Plumley, Nadeau's business partner, as he, Nadeau, was closing. Jack Plumley corroborated this story, stating that he and Gonsalves left work at around 5:00 p. m. and drove directly to Plumley's home, a drive of some 20 minutes,[1] where they ate dinner together with Plumley's wife, Elizabeth. Elizabeth, a secretary to the Director of Air Traffic Control Systems at a nearby Air Force base, corroborated this story. Gonsalves himself did not testify.

The only evidence other than the two identifying witnesses offered by the government against Gonsalves was the alleged threatening statement at issue on this appeal. While Gonsalves was awaiting trial

on this and two other robbery charges[2] in the Middlesex House of Correction at Billerica, Massachusetts, the FBI requested an opportunity to give him a lie detector test regarding the Lowell robbery. Gonsalves, in consultation with his counsel, agreed to take this test and signed a statement on the day the test was administered that anything he said during the interview could be used against him in court. Agent Bunszel, who administered the test, testified that Gonsalves maintained his innocence throughout the interview. Nevertheless, after he completed the lie detector test,[3] Gonsalves spontaneously stated, "That broad is dead." When Agent Bunszel asked "What broad?", Gonsalves replied, "That broad that identified me."

At trial, Gonsalves' attorney objected to allowing Agent Bunszel to testify to this statement, which the government said showed a consciousness of guilt. Gonsalves' attorney contended it was only minimally probative of guilt consciousness while being highly prejudicial and inflammatory. He argued that it would be most difficult to minimize the prejudice since, were he to cross-examine Agent Bunszel vigorously, he would likely bring out that Gonsalves was in jail awaiting trial on other indictments and had failed the lie detector test. The district court nevertheless ruled that the statement could be admitted. The court discussed the statement's probative value and its possible unfair prejudice, weighing the one against the other in conformity with Federal Rule of Evidence 403 and concluding that the potential for unfair prejudice did not outweigh the statement's probative value. At defendant's request, however, the court gave a limiting instruction prior to the statement's introduction[4]

1. Plumley's house was a six to eight minute drive from the bank which was robbed.

2. Gonsalves was ultimately acquitted on both other robbery charges.

3. Gonsalves failed the test and made the challenged statement in response to being so informed. At Gonsalves' request, the results of the test and the fact that his statement was

made after being advised of them were not revealed to the jury.

4. The district court's limiting instruction was as follows:

THE COURT: Members of the jury, in the testimony of this witness you are about to hear evidence of acts or statements of the defendant. This evidence is received for a limited purpose. You may consider this evidence only as a circumstance tending to

and a further such instruction at the conclusion of the trial. Both the government and the defense mentioned the statement in their closing arguments. The government characterized it as a "death threat" proving consciousness of guilt. The defense argued that no one in his right mind would make a serious death threat concerning an adverse witness to an FBI agent and went on to say that the statement was merely an immature expression of Gonsalves' frustration at being misidentified for a serious crime. Gonsalves was convicted and this appeal followed.

Evidence of bad conduct, like the threat at issue here, is inadmissible to prove character in order to show the defendant acted in conformity therewith. Fed.R.Evid. 404(a). Such evidence may, however, be admissible for other purposes, such as to show intent, knowledge, or identity. Fed.R. Evid. 404(b). This court has recently held that "[e]vidence of threats to witnesses can be relevant to show consciousness of guilt." *United States v. Monahan,* 633 F.2d 984, 985 (1st Cir. 1980) (per curiam). Like evidence of flight from the scene of a crime, bribery of an adverse witness, or the destruction of incriminating evidence, threats made by a defendant respecting a specific hostile witness may imply that the party making the threat has something specific to hide. The desire to "cover something up," in turn, implies a consciousness of guilt of the particular crime charged. *See 2 Wigmore on Evidence* §§ 273–77 (Chadbourne Revision 1979).

While probative for this purpose, however, such evidence should not be admitted if its probative value "is substantially outweighed by the danger of unfair prejudice." Fed.R.Evid. 403. Other courts have held that evidence of inflammatory threats which tend to paint a picture of the defendant as an unusually violent person—or as a cold-blooded killer—may cause "severe prejudice" to the defendant and, in a proper case, should be excluded. *See, e.g., United States v. Check,* 582 F.2d 668, 685–86 (2d Cir. 1978); *United States v. Weir,* 575 F.2d 668, 669–71 (8th Cir. 1978). In *United States v. Monahan,* 633 F.2d 984, 985 (1st Cir. 1980), we reserved the question whether "inflammatory or macabre" threats should be excluded under Rule 403.

■ In the present case, the district court considered the proffered evidence, expressly weighed its probative value against the possibility that it would be misused by the jury so as to prejudice the defendant unfairly, and concluded that the danger of unfair prejudice did not substantially outweigh its probative value. A district court's ultimate determination in such a situation is reviewed on appeal only for abuse of discretion. *Dente v. Riddell, Inc.,* 664 F.2d 1, 5 (1981) and cases cited. We find no abuse of discretion here.

■ Both the government's identification evidence and the defense alibi were strong, and as the government lacked any other evidence to corroborate its two eyewitnesses,[5] its need for the supplementary evidence was "substantial," as the district court found. In such circumstances, defendant's "That broad is dead" comment took on enhanced importance. *See United States v. Check,* 582 F.2d at 685 (requiring government to show "clear need" to introduce threat evidence). It is true that because the threatening statement was made to an FBI agent rather than to the witness herself, it was arguably less suggestive of a realistic threat of harm to the witness. Nevertheless, we cannot say these circumstances eliminated the inference that the

show consciousness of guilt of the offense charged in this trial if you so interpret it. You are not to consider this evidence for any other purpose. You are instructed also that the receipt of this evidence does not in any way alter the presumption of innocence and the government's burden of proof beyond reasonable doubt.

It is for you, the jury, to determine whether you believe the evidence, and if you do, what weight and significance you accord it as evidence of consciousness of guilt.

5. The FBI was unable in this case to develop any latent fingerprints from the pen used to write the demand note. Nor were handwriting experts able to draw any conclusions from a comparison of the note itself with a sample of the defendant's handwriting.

statement sprang from a consciousness of guilt. Its ultimate probative weight was something the court could reasonably think best left to the jury.

Balanced against the statement's probative value was the danger of unfair prejudice to the defendant. We cannot say there was no such danger. Still, there were two factors which limited it. First, the district court gave well-formulated limiting instructions both before the evidence was introduced and at the end of the trial. *See* note 4, *supra.*

Second, the comment itself was not particularly inflammatory nor was it "macabre." *See United States v. Monahan*, 633 F.2d at 985. While characterized by the government as a "death threat," it could also be viewed—given the fact it was made to an FBI agent while the defendant steadfastly maintained his innocence—as but an impulsive statement by an immature and wrongly accused defendant. *Compare United States v. McManaman*, 606 F.2d 919 (10th Cir. 1979) (evidence of taped conversations plotting murder of witness excluded); *United States v. Weir*, 575 F.2d 668 (8th Cir. 1978) (threats of three assassinations, plus account of attempted murder resulting in bullet wound should be excluded). Gonsalves' attorney made just this argument to the jury.[6]

We think the district court did not act unreasonably in determining that the danger of unfair prejudice did not "substantially" outweigh the probative value of the comment and that the evidence should be put before the jury for such weight as it chose to give it.

*Affirmed.*

---

**6.** The defendant argues that he was hampered from developing the full circumstances surrounding the statement because those circumstances would have prejudiced him even more than did the threat itself. We note that it was defendant's decision to take the lie detector test in the first place, however, and it was also his decision—if an entirely reasonable one for his counsel to make—to forego a more probing cross-examination. Defendant had no guaranteed right to the best of all possible worlds: having sought the benefits that might have flowed from a successful lie detector test, defendant had no claim to avoid the self-imposed consequences of an ill-advised remark which the test provoked.