**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Clifford HOWARD,**
**Defendant-Appellant.**

Nos. 83–5434, 83–5533.

United States Court of Appeals,
Sixth Circuit.

Reargued June 14, 1985.

Decided Aug. 12, 1985.

**58**

C. David Hagerman (argued), Robert F. Houlihan, Jr., Ashland, Ky., for defendant-appellant.

Louis DeFalaise, U.S. Atty., Fred A. Stine, V (argued), Lexington, Ky., for plaintiff-appellee.

Before LIVELY, Chief Judge, and ENGEL, KEITH, MERRITT, KENNEDY, MARTIN, JONES, CONTIE, KRUPANSKY, WELLFORD and MILBURN, Circuit Judges.

CORNELIA G. KENNEDY, Circuit Judge.

The principal question before this Court is whether statements of a coconspirator in an arson-insurance mail fraud conspiracy, which were uttered before the conspirators had collected the insurance proceeds and which were aimed at avoiding detection of the conspiracy, were in furtherance of the conspiracy and therefore admissible as evidence against another coconspirator. We hold that such statements fall within Fed. R.Evid. 801(d)(2)(E),[1] the coconspirator exception to the hearsay rule.

**I**

A panel of this Court initially heard a joint appeal by appellant Clifford Howard ("Clifford")[2] and another defendant, Charles Shelton ("Charles"), from convictions for conspiracy and mail and wire fraud. The facts surrounding this appeal are set forth in some detail in the panel opinion, which is reported at 752 F.2d 220 (6th Cir.1985). Briefly, Charles and a friend, Johnny Howard ("Johnny"), burned the home belonging to Clifford and his wife, Harriett, who was also Charles' sister, to obtain insurance proceeds. The scheme eventually failed when Johnny became a government informant after he and Charles had committed the arson but before Clifford and Harriett had collected the insurance proceeds. As a government informant, Johnny recorded two conversations that he had with Charles relating to the arson of the house.[3]

1. Fed.R.Evid. 801(d)(2)(E) provides:
    A statement is not hearsay if ... [t]he statement is offered against a party and is ... a statement by a coconspirator of a party during the course and in furtherance of the conspiracy.

2. Because of the reoccurrence of last names, we will refer, as the original panel did, to the alleged conspirators and members of their families by their first names.

3. The relevant portions of the conversations are as follows:
    Conversation between John Howard and Charles Shelton, dated May 9, 1981.
    JH: Right. What, oh hell I was gonna say, whatscallit, wanted me to go do a damn burn a house.
    CS: Who did?
    JH: What's the guy's name. Stanley? That deputy sheriff?
    CS: Yeah Ray Stanley. Tall slim boy?
    JH: Yeah.

    CS: Why have you been dealing with him?
    JH: No I just met him. They just said I'd do anything for a dollar.
    CS: Wh'd, who'd you meet him through?
    JH: Down at Holbrook's. What's his name?
    CS: Don't do it. Don't fuckin do it.
    JH: OK.
    CS: Don't do it. What the mother-fuckers are probably trying to do, probably trying to set you up into something else.
    JH: Yeah. Yeah. Wasn't gonna do it.
    CS: See and Bill knows about these insurance houses.
    JH: Insurance houses?
    CS: He don't know that me and you have burned any, but he knows that I had the contact to do some of these houses.
    JH: Oh. I don't know nothing about them houses.
    CS: Well I know that. But that I'm saying is don't even go burn no fuckin house down.
    JH: Shit I wouldn't burn nothin. I was just said, you know, if you know'd the guy.
    CS: Yeah I know him.

The District Court admitted the tapes of those conversations against appellant pursuant to Fed.R.Evid. 801(d)(2)(E). The original panel of this Court affirmed Charles' convictions, but by a divided vote, reversed Clifford's convictions on the ground that the two conversations between Johnny and Charles were not admissible against Clifford because the conversations were not in furtherance of the conspiracy. In an order dated April 19, 1985, this Court granted a rehearing *en banc* vacating the previous opinion and judgment in Clifford's appeal only.

> JH: I know that last incident, my Goddamn it, we blowed our fuckin self up.
> CS: So, don't, don't even, don't even go fuckin do nothin.
> JH: Right.
> Conversation between John Howard and Charles Shelton, dated May 12, 1981.
> JH: Did you find out anything about it, how's your sister make out?
> CS: Oh, she's maintaining, you know, staying straight.
> JH: Is she? She ever get a settlement?
> CS: Not yet.
> JH: Goddamn. Well she should.
> CS: She if they get that fuckin settlement, see I've got 8 thousand dollars coming on that fuckin settlement.
> JH: Supposedly.
> CS: Well, 6 to 8. Man garan.... here's what he guaranteed me five. He guaranteed me. He said Goddamn said I'll give you five grand.
> JH: For what?
> CS: Nothing. Well, not exactly nothing. There was something else involved.
> JH: Yeah, yeah. Better off (pause) I know.
> CS: You, I don't know whether he's jackin his fuckin leg or what.
> JH: I just wondered if she ever got a.
> CS: No, but they ain't settled a fuckin thing. They was supposed to come, (inaudible) ... little bit closer.
> JH: Yeah.
> CS: They're supposed to come in there and dig every fuckin thing up. Huting for dynamite.
> JH: Dig it up?
> CS: I said yeah, I said well Goddamn it tell 'em there ain't no fuckin dynamite involved. Cause I know they ain't.
> JH: Shit you and me both know that. You and your 40 fuckin gallons of gas. 40. I couldn't believe you had that much gas.
>
> CS: By God it burned down didn't it?
> JH: It didn't burn, it blowed, mother fuck. You should never put 40 gallons in there.
> CS: I told him I said hey, I said take my word for it and I'll give you a deposition they ain't no, ain't no fuckin dynamite involved. It's all gas-

## II

The central question on *en banc* review is whether the District Court violated Fed. R.Evid. 801(d)(2)(E) in admitting into evidence against Clifford the tape recorded conversations between Johnny and Charles. In *United States v. Enright*, 579 F.2d 980, 986 (6th Cir.1978), this Court held that before the government may use the coconspirator exception to the hearsay rule, the government must show by a preponderance of the evidence that: (1) a conspiracy existed; (2) the defendant against whom the

> oline. He said fuck you, I can't do that, Goddamn it. He said they want to come in here and look for it. He said I gotta let 'em come in here and look for it.*
> JH: Yet but how come you used 40 fuckin gallons?
> CS: I wanted to make sure that mother fucker came down. Have they ask you any more about fuckin Stanley?
> JH: No.
> CS: Burn that fuckin place or whatever it was?
> JH: No they asked me to burn one.
> CS: Yeah I knew that.
> JH: I though about it, cause the money was pretty good.... Like you told me, not to do nothing.
> CS: Only thing I'm afraid of, I'm afraid the mother fuckers may be trying to fuckin set you up.
> JH: Yeah. I said no I was under investigation and that's the only thing that kept me out of it.
> CS: Tell 'em if they want to wait a couple of fuckin months, ah, you'd be glad to do it.
> JH: Me and you would do it. Right?
> CS: (Laugh).
> JH: Well the price is right.
> CS: That will pend them. You know, hold them off.
> JH: Yeah. I just told 'em I was under investigation and I didn't want to mess with them. I was just wondering if she got any damn money out of that damn....
> CS: No. I ain't got....
> JH: I hate to see her lose her damn place there.
> CS: They can't lose nothing. The worst thing that could happen is the mother fuckers come in and close it all out and say hey it belongs to us.

---

* When asked who "he" referred to, both Charles and Johnny responded that "he" referred to Clifford. *See* Excerpted Transcript of Trial on March 1–4, 1983, vol. II at 330 (testimony of Johnny Howard); *id.,* vol. III at 571 (testimony of Charles Shelton).

government seeks to introduce the hearsay evidence was a member of that conspiracy; and (3) a coconspirator made the hearsay statement in the course and in furtherance of the conspiracy. *See also United States v. Hamilton*, 689 F.2d 1262, 1268 (6th Cir. 1982), *cert. denied*, 459 U.S. 1117, 103 S.Ct. 753, 74 L.Ed.2d 971 (1983); *United States v. Vinson*, 606 F.2d 149, 152 (6th Cir.1979), *cert. denied*, 444 U.S. 1074, 100 S.Ct. 1020, 62 L.Ed.2d 756 *reh'g denied*, 445 U.S. 972, 100 S.Ct. 1668, 64 L.Ed.2d 251 (1980). Appellant challenges only the third requirement.

■ Appellant correctly observes that an agreement to conceal a completed crime does not extend the life of a conspiracy, *Grunewald v. United States*, 353 U.S. 391, 405, 77 S.Ct. 963, 974, 1 L.Ed.2d 931 (1957); *Krulewitch v. United States*, 336 U.S. 440, 442–44, 69 S.Ct. 716, 717–18, 93 L.Ed. 790 (1949). Here, however, the conspiracy to defraud the insurance company of the insurance proceeds was still ongoing. The insurance company had not paid the insurance claim at the time of the taped conversations and was still investigating the cause of the fire.

The challenged testimony in *United States v. Krulewitch, supra*, involved a conversation that allegedly occurred more than a month and a half after the woman, whom defendant had allegedly induced to travel from New York to Florida for the purpose of prostitution, had gone to Miami. Since the central aim of the alleged conspiracy to transport a woman from one state to another for prostitution had long since ended, the Supreme Court held that the district court erred in admitting the hearsay as evidence against the defendant because the conversation was not in furtherance of the conspiracy. The Court rejected the notion that after the central objectives of a criminal conspiracy have succeeded or failed, a subsidiary phase of the conspiracy, which has the conspiracy's concealment as its sole objective, always survives. *Krulewitch*, however, does not stand for the proposition that acts or statements made to avoid detection of a criminal conspiracy can never

further the conspiracy. Rather, *Krulewitch* implies that avoidance of detection can further a conspiracy if the conspiracy has not achieved its central aim.

The Supreme Court has explicitly recognized that acts of concealment can further a criminal conspiracy as long as the conspirators are acting to advance their main criminal objectives. In *Grunewald v. United States, supra*, the Court stated:

[A] vital distinction must be made between acts of concealment done in furtherance of the *main* criminal objectives of the conspiracy, and acts of concealment done after these central objectives have been attained, for the purpose only of covering up after the crime.

*Id.*, 353 U.S. at 405, 77 S.Ct. at 974 (emphasis in original). *Grunewald* involved a conspiracy to defraud the government of tax revenues by obtaining "no prosecution" rulings. Since the main objective of the conspiracy had been obtained, the Supreme Court held that the conspirators' later attempts to conceal the conspiracy did not extend the three-year statute of limitations. The Court, however, specifically discussed the example of a kidnapping conspiracy in its analysis. The Court reasoned that a kidnapping conspiracy's acts of concealment while waiting for ransom constitute acts of concealment in furtherance of the objectives of the conspiracy itself. On the other hand, the kidnappers' acts of concealment after they have abandoned the kidnapped person and seek to avoid detection, do not further the conspiracy's main objective.

■ Appellant contends that the taped conversations had no purpose or effect of furthering any object of any alleged conspiracy. We disagree. Since the insurance company had not settled the insurance claim at the time of the tape recorded conversations, the conspiracy's central objective to secure the insurance proceeds had not been achieved or abandoned. In both the taped recorded conversations and at trial, Johnny and Charles indicated that they knew and Clifford knew that the Kentucky State Police *and* the insurance com-

pany were investigating the suspicious circumstances surrounding the fire. The detection of the arson scheme by either the Kentucky State Police or the insurance company would thwart their efforts to obtain the insurance proceeds. The conspirators had to conceal Charles' and Johnny's part in burning down the house until the insurance company paid the proceeds or there would be no payment. These conversations, designed to keep the insurance company or the Kentucky State Police from uncovering the arson until the money was paid, were at least partly calculated to further the aim of securing the insurance proceeds. The need for concealment in this case is analagous to the kidnapping example the Supreme Court suggested in *Grunewald*. The Court recognized that since kidnappers must conceal their identity and location to obtain the payment of the ransom, the usual object of kidnapping, such acts of concealment would constitute acts in furtherance of a kidnapping conspiracy. In this case, avoiding detection of the arson and arsonists was also important to the objective of the conspiracy because detection would thwart the collection of the insurance proceeds. We hold that the tape recorded conversations between Johnny and Charles were made in furtherance of the conspiracy to defraud the insurance company.

The Seventh Circuit has reached the same result in an analogous case. In *United States v. Xheka*, 704 F.2d 974, 985–86 (7th Cir.), *cert. denied*, — U.S. —, 104 S.Ct. 486, 78 S.Ct. 682 (1983), the defendants, who conspired to burn their restaurant and defraud the insurance company, argued that the conspiracy ended as soon as the fire was set. The court rejected that argument saying, "[T]he conspiracy continues until defendants obtain the insurance money or abandon their quest." *Id.* at 986. The Seventh Circuit noted that the recovery of the insurance proceeds was the primary goal of the conspiracy and that the goal of obtaining money from the insurance company, which required that the true nature of the fire remain concealed, distinguished the case from *Grunewald*. *See United States v. Burton*, 724 F.2d 1283 (7th Cir.1984).

■ Although the answer to the question whether attempts to conceal a conspiracy are in furtherance of the ongoing conspiracy depends upon the facts of each case, the District Court did not err in admitting the taped conversations. In conspiracies where a main objective has not been attained or abandoned and concealment is essential to success of that objective, attempts to conceal the conspiracy are made in furtherance of the conspiracy.

The original panel also found that the taped conversations were inadmissible because they "lack any indicia of reliability." 752 F.2d at 231. The panel stated: "We find entirely unreliable any statements made by the informant." *Id.* The reliability of the tapes does not, however, depend upon the informant and appellant has not objected to the tapes on the ground that they do not accurately reflect the conversation that occurred.[4] Appellant does not challenge the sufficiency of the evidence that a conspiracy existed, that he was a member of the conspiracy, or that there was evidence that Charles was a member of the conspiracy. The panel's conclusion that Charles' statements regarding appellant Clifford's involvement are unreliable appears to be based upon a general dissatisfaction with the coconspirator exception. The panel also stated:

We also find unreliable statements elicited from Charles regarding Clifford's involvement in the conspiracy. Although one is unlikely to adopt incriminating statements concerning oneself, there is no reason to believe that one will necessarily speak out to exculpate another.... One can imagine a case in which a person deliberately makes incriminating but un-

---

**4.** John Howard's statements, of course, are not those of a coconspirator since he had withdrawn from the conspiracy. His portion of the conversation is, however, necessary to put Shel-

ton's statements in context and give them their correct meaning. Appellant failed to ask for a limiting instruction. Fed.R.Evid. 105.

true statements about another to a known government informant.

*Id.* There is nothing in this case to indicate that the statements are any less reliable than other coconspirator statements. Finally, since both Johnny and Charles testified at trial, Clifford could have challenged the reliability of the conversations on cross-examination. Any question of reliability was for the jury to determine. *Hoffa v. United States*, 385 U.S. 293, 311, 87 S.Ct. 408, 418, 17 L.Ed.2d 374 (1966). The District Court properly admitted the taped recorded conversations into evidence against Clifford under Fed.R.Evid. 801(d)(2)(E).

## III

Appellant raises several other issues on appeal. For the reasons stated in the original panel opinion, we find those contentions to be without merit and adopt sections I, II, III, and IV of its opinion.

Appellant's convictions are AFFIRMED.

BOYCE F. MARTIN, Jr., Circuit Judge, dissenting, joined by KEITH and NATHANIEL R. JONES, Circuit Judges.

For the reasons well stated by Judge Swygert in his opinion in the original disposition of this case, *see United States v. Howard*, 752 F.2d 220, 228–31 (6th Cir. 1985), I dissent.

I do not disagree with Judge Kennedy's statement of the legal principles concerning whether a statement is made "in furtherance of" a conspiracy, and I do not understand those principles to deviate from those articulated by Judge Swygert. The problem in this case is one of the proper application of those principles to the facts at hand. That is where I part company with the majority.

The majority does not examine the conversations in any detail in order to determine whether either or both of them should have been admitted against Clifford. Instead, the majority lays out the applicable legal principles and then makes the sweeping, unsupported assertion that, "These conversations, designed to keep the insurance company or the Kentucky State Police from uncovering the arson until the money was paid, were at least partly calculated to further the aim of securing the insurance proceeds." That assertion does not survive analysis, particularly with respect to the May 12 conversation, which was the more damaging of the two conversations.

I have only one detail to add to Judge Swygert's fine analysis of the conversations. Unlike the May 9 conversation, in which Charles speaks of him and Johnny burning "insurance houses" in the past but does not implicate Clifford in those burnings,[1] the May 12 conversation does implicate Clifford. The latter conversation, however, does not contain any statements made in furtherance of the conspiracy. In the May 9 conversation Charles admonishes Johnny not to become involved in future burnings so they can avoid detection and (by implication) obtain the proceeds from the past burnings. The May 12 conversation does not contain any such admonition. Johnny merely recalls that Charles previously told him not to become involved in future burnings, and Charles merely expresses his fear that their past crimes will be detected. The May 12 conversation certainly relates to the conspiracy, but it was not made in furtherance of the conspiracy. No plans were made, no duties were delegated, no instructions were given. The conversation did nothing to advance the remaining goal of obtaining the insurance proceeds.

The May 9 conversation did not implicate Clifford and thus was not made in further-

---

1. At trial, the district court sustained defense counsel's objections when the prosecutor repeatedly asked Johnny to interpret for the jury what he and Charles were talking about in the May 9 conversation. The court noted that "the conversations speak for themselves." Defense counsel failed to object, however, when Johnny was asked what he meant when he referred to "that last incident." Johnny responded that he was referring to his and Charles' burning of Clifford's house. For the reasons stated by Judge Swygert, 752 F.2d at 231, Johnny's post hoc interpretation of the conversation should not be credited. At any rate, the improper admission of the May 12 conversation is, in itself, sufficient to require reversal.

ance of a conspiracy *in which he was a member* (expressed differently, the conversation was not relevant with respect to the case against Clifford), and the May 12 conversation was not made *in furtherance of* any conspiracy. I feel the tape recordings were not properly admissible against Clifford and his conviction should be reversed.