**UNITED STATES of America, Appellee,**

v.

**Gerald James CROCKER,**
**Defendant, Appellant.**

**No. 84–1849.**

United States Court of Appeals,
First Circuit.

Argued Sept. 5, 1985.

Decided April 9, 1986.

Jonathan Shapiro with whom Stern & Shapiro, Boston, Mass., was on brief, for defendant, appellant.

Victor A. Wild, Asst. U.S. Atty., with whom William F. Weld, U.S. Atty., Boston, Mass., was on brief, for appellee.

Before BOWNES and BREYER, Circuit Judges, and CEREZO,* District Judge.

CEREZO, District Judge.

Gerald James Crocker was convicted by a jury on one count of a two-count indictment for conspiring to commit bank theft, 18 U.S.C. Sections 371 and 2113(b), and was sentenced to three years imprisonment. On appeal, he contends that the district court erred in admitting evidence of a 1977 arrest, of co-conspirator acts prior to the existence of the conspiracy, of recorded telephone conversations between a conspirator who turned informant and other co-conspirators and of co-conspirator acts not in furtherance of the conspiracy. He also attacks the sentence as retaliatory for having exercised his constitutional right to stand trial. The government argues that the evidence of the prior arrest was properly admitted under Fed.R.Evid. 404(b), that evidence of co-conspirators' acts occurring before and during the conspiracy was necessary to fully understand it and that the

* Of the District of Puerto Rico, sitting by designa-  tion.

conspirators' recorded statements were properly admitted under the hearsay exception of Rule 801(d)(2)(E). It contends that there was ample, direct evidence connecting Crocker with the charge. The government's view on the sentence imposed is that there was no significant difference between the one imposed on defendant and the ones imposed on other co-conspirators who pleaded guilty. Although none of the evidentiary issues raised justify reversal, the sentence, however, must be vacated and the case remanded for resentencing.

This particular conspiracy consisted of cashing counterfeit checks in various banks in the New England area from on or about January 1984 to May 3, 1984. Defendant and other conspirators would obtain counterfeit blank checks from Charles Crocker, an indicted co-conspirator and brother of the defendant. Charles had obtained these checks seven or eight years before, some were stolen while others were printed. Those that were printed had the names of various corporations and were filled out by Gerald Crocker and other conspirators with false signatures and printed amounts. Besides obtaining and preparing checks, appellant's role was to drive a co-conspirator to the banks where the checks would be cashed and the proceeds split equally.

■■■ Crocker claims that the admission of evidence related to his 1977 arrest violated Fed.R.Evid. 404(b). This was brought up during redirect examination of co-conspirator Gaeta, the government's key witness. Crocker and Gaeta were arrested in 1977 for uttering counterfeit checks. The government argued at trial that this evidence was necessary since defendant had questioned Gaeta as to prior counterfeit check cashing activities but had limited his inquiry to those between Gaeta and defendant's brother. Whether or not the government was entitled to introduce this evidence because defendant opened the door to Gaeta's past activities, see *United States v. Fortes,* 619 F.2d 108, 121 (1st Cir.1980), the court properly admitted it. Rule 404(b) permits evidence of other crimes, wrongs or acts to prove "motive, opportunity, in-

tent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.* The process of balancing, on the one side, the need for the other crimes evidence and its probative value in supporting an issue and on the other, the risk that its admission will result in unfair prejudice to the accused, is largely committed to the district court's sound discretion. *United States v. Fosher,* 568 F.2d 207, 212–13 (1st Cir.1978). The prior event and defendant's participation and involvement with co-conspirator Gaeta had sufficient similar elements with his participation and involvement in the conspiracy charged to make it relevant and highly probative of his criminal knowledge and intent. *United States v. Indelicato,* 611 F.2d 376, 386, 87 (1st Cir.1979). Defendant's "knowing" participation in the conspiracy was a crucial element which if not clearly established could have left the jury with the impression that defendant was merely driving his friend Gaeta to several New England banks. Cf. *United States v. Zeuli,* 725 F.2d 813–16 (1st Cir. 1984) ("In every conspiracy case ... a not guilty plea renders the defendant's intent a material issue and imposes a difficult burden on the government.") The fact that defendant had been arrested before with co-conspirator Gaeta while in an automobile with counterfeit checks was highly probative of his knowledge that Gaeta's checks and his trips to the banks, were for an illicit purpose. The district court did not abuse its discretion in admitting this evidence after balancing its probative value against its potential prejudice. *See United States v. Morris,* 700 F.2d 427 (1st Cir.), *cert. denied, Graham v. United States,* 461 U.S. 947, 103 S.Ct. 2128, 77 L.Ed.2d 1306 (1983).

■■■ Appellant also objects to the admission of certain co-conspirator statements as not made in furtherance of the conspiracy. He challenges the recorded conversations where co-conspirator Gaeta, working now as a government agent, is heard talking to co-conspirator Charles Crocker about the possibility of continuing the criminal enterprise. The district court made the neces-

sary findings as to the government's proof of the existence of the conspiracy as more likely than not before admitting these statements, *see United States v. Petrozziello*, 548 F.2d 20 (1st Cir.1977). Defendant does not question that these statements were made during the conspiracy or that the existence of a conspiracy had been established. His objections rest solely on the assumption that the conversations did not further the conspiracy because they did not result in any criminal activity and were only idle talk elicited by a conspirator-informant in an effort to have Charles Crocker incriminate his own brother. These recorded statements were more than idle chatter. These conversations identified the participants in the conspiracy and revealed their disposition and availability to continue with the counterfeit check cashing activity. In fact, they were so revealing of the conspiracy's development and the conspirators' participation that one of them resulted in the arrest of defendant and co-conspirator Healy while on their way to another counterfeit check cashing trip. Even though the statements were "elicited" by a co-conspirator who had turned government agent, the situation in our case is not similar to the one in *United States v. Howard*, 752 F.2d 220 (6th Cir.1985).[1] *Compare United States v. Mitlo*, 714 F.2d 294, 297–98 (3rd Cir.), *cert. denied*, 464 U.S. 1018, 104 S.Ct. 550, 78 L.Ed.2d 724 (1983). The co-conspirator acting as agent in the present case did not "create" incriminating statements of little probative value or about some far removed, different conspiracy. The references to defendant in these particular statements was only a fraction of the evidence presented at trial, the greater part of which established Gerald Crocker's participation in the conspiracy. The statements revealed acts and transactions which were part of the conspiracy and which occurred independently of any inducement by the co-conspirator turned agent. Whether they furthered the conspiracy, it should be noted

that once the conspiracy is established, statements by co-conspirators which do not actually achieve some of the conspiracy's goals but which reveal an intention to promote its objectives have been admitted as being "in furtherance of" the conspiracy, within the meaning of the hearsay exception. *See United States v. Guerro*, 693 F.2d 10, 13 (1st Cir.1982). Statements of a conspirator identifying a fellow co-conspirator have also been considered as made in furtherance of the conspiracy. *United States v. Handy*, 668 F.2d 407, 408 (8th Cir.1982). The district court did not commit reversible error in considering these statements as being in furtherance of the conspiracy and admitting them under the *Petrozziello* standard.

■ As to the admission of certain *acts* by other co-conspirators, defendant argues that the district court should have excluded the evidence related to Gaeta and Charles Crocker's counterfeit check transaction during the latter part of December 1983 since the indictment fixed the onset of the conspiracy in January 1984. The indictment, however, does not pin the conspiracy onset at any specific day but merely states that it commenced "on or about" January 1984. It is well established that approximate dates in an indictment are not controlling, *see United States v. Brody*, 486 F.2d 291 (8th Cir.1973) *cert. denied*, 417 U.S. 949, 94 S.Ct. 3077, 41 L.Ed.2d 670 (1974); *cf. United States v. Morris*, 700 F.2d 427 (1st Cir.), *cert. denied, Graham v. United States*, 461 U.S. 947, 103 S.Ct. 2128, 77 L.Ed.2d 1306 (1983) (where particular date is not substantive element of crime charged strict chronological accuracy is not required and variance with date alleged and date proved is permitted), and that co-conspirators' acts, as distinguished from their statements, are admissible to establish the nature and objective of the conspiracy regardless of whether they were made during the course of the conspiracy. *Ander-*

---

**1.** *Howard* was vacated on rehearing en banc. *See United States v. Howard*, 770 F.2d 57 (6th Cir.1985). The Sixth Circuit found that the recorded statements *were* in furtherance of the

conspiracy and that the question of their retaliability was for the jury to determine. *Id.* at 61, 62.

*son v. United States,* 417 U.S. 211, 219, 94 S.Ct. 2253, 2260, 41 L.Ed.2d 20 (1974); *Lutwak v. United States,* 344 U.S. 604, 73 S.Ct. 481, 97 L.Ed. 593 (1953). The general criteria to apply to this type of evidence is relevance. *United States v. Hickey,* 360 F.2d 127 (7th Cir.), *cert. denied,* 358 U.S. 928, 87 S.Ct. 284, 17 L.Ed.2d 210 (1966). Evidence of acts prior to a conspiracy's alleged onset have been admitted as relevant to show the conspiracy's existence, its purpose and the significance of later behavior; *United States v. Crockett,* 514 F.2d 64, 72 (5th Cir.1975); to show the ongoing relationship between co-conspirators and to help the jury understand conspirators' later role during conspiracy. *United States v. Simmons,* 679 F.2d 1042, 1050 (3rd Cir. 1982), *cert. denied, Brown v. United States,* 462 U.S. 1134, 103 S.Ct. 3117, 77 L.Ed.2d 1370 (1983); to prove motive or intent regarding the conspiracy charged, *United States v. Enright,* 579 F.2d 980, 988 (6th Cir.1978); or to show the conspiracy's nature and objectives, *United States v. Morton,* 483 F.2d 573, 576 (8th Cir.1973). The district court did not abuse its discretion in admitting this evidence, *see United States v. Gonsalves,* 668 F.2d 73, 75 (1st Cir.), *cert. denied,* 456 U.S. 909, 102 S.Ct. 1759, 72 L.Ed.2d 168 (1982), for the closeness of the late December 1983 acts to the January 1984 onset charged and the relationship of these acts to those carried out during the first quarter of 1984 made it highly relevant to a proper understanding of the origin, scope, nature and objective of the conspiracy as well as to defendant's participation in it.

We also conclude that the district court did not commit reversible error by admitting evidence of other co-conspirator acts occurring during the conspiracy which defendant contends were not "in furtherance of," namely, the sale of additional, similar counterfeit checks by Charles Crocker to an undercover agent and co-conspirator Healy's efforts with another undercover agent to obtain a check-printing machine. Defendant's complaint here is, in a way, the central theme that subtly underlies his entire appeal: that these acts could

have been improperly imputed to defendant as adopted by him through the vicarious characteristic of a conspiracy offense, without their being really related to the conspiracy. It is important to clarify, however, that appellant's references to this possibility must be considered within the proper context of his evidentiary argument on admissibility. Certainly ascribing criminal liability to a conspirator for a co-conspirator's acts by way of the adoption mechanism inherent in a conspiracy requires that the imputed acts be in furtherance of the conspiracy or that they fall within its reasonably foreseeable scope. *Pinkerton v. United States,* 328 U.S. 640, 647–48, 66 S.Ct. 1180, 1184, 90 L.Ed. 1489 (1946). However, once the acts of an indicted or unindicted conspirator are admitted in evidence, it is for the jury to decide whether those acts were part of and in furtherance of the conspiracy and, thus, adopted by the passive co-conspirator as his own. *United States v. Fontenot,* 483 F.2d 315, 322 (5th Cir.1973). This argument would be relevant if defendant were challenging the jury's verdict as based on insufficient evidence. If, on the other hand, defendant is suggesting that the court, as part of its *Petrozziello* conditional admissibility ruling, had to exclude those acts which could not have been considered to be in furtherance of the conspiracy, reliance on this case is entirely misplaced. *Petrozziello* is concerned with the admissibility of hearsay *statements* pursuant to Rule 801(d)(2)(E) and there is nothing in either *Petrozziello* or its progeny requiring that this admissibility screening be also applied to co-conspirator *acts. See Lutwak,* 344 U.S. at 618, 73 S.Ct. at 489.

Therefore, the argument that this evidence may have been improperly used by the jury must be considered within the context of a relevancy analysis and the "unfair prejudice" exclusion found in Rule 403. *See United States v. Jarabek,* 726 F.2d 889 (1st Cir.1984); *Gonsalves,* 668 F.2d at 75. Evidence of the undercover deals was highly relevant to establish the existence of the conspiracy and its particu-

lar workings. It served an important purpose in the government's case because it corroborated crucial testimonial evidence. *United States v. Bobo,* 586 F.2d 355, 372 (5th Cir.1978), *cert. denied, Rowan v. United States,* 440 U.S. 976, 99 S.Ct. 1546, 59 L.Ed.2d 795 (1979). The evidence also shed light on the conspirators' roles, method of operation and the extent of the criminal enterprise. There was sufficient additional evidence of defendant's knowledge and direct participation in other stages of the conspiratorial activity to minimize any remote "unfair" prejudicial effect that the evidence may have had, even assuming there was any "unfair prejudice" within the meaning of the rule. *See Carter v. Hewitt,* 617 F.2d 961 (3rd Cir.1980). Conspiracies are difficult to prove given their secretive nature and the government's heavy burden in criminal cases, *see Zeuli,* 725 F.2d at 816. This burden would be practically impossible to meet if evidence of a conspirator's acts which would seem to a defendant to be slightly disconnected from the main conspiracy were excluded because of the possibility that it could be improperly utilized by the jury. If we were to follow this reasoning, practically all potentially damaging evidence could be excluded because of possible juror misuse. *See United States v. Monahan,* 633 F.2d 984 (1st Cir.1980). The possibility of jury confusion is best dealt with through the use of well crafted jury instructions rather than by excluding relevant evidence. The district court did not err in admitting this evidence in view of the broad discretion afforded a court in making relevancy rulings in general, *see gen. Morris,* 700 F.2d 431; *Gonsalves,* 668 F.2d at 75. For admissibility rulings within the context of a conspiracy case, *see United States v. Apker,* 705 F.2d 293, 298 (8th Cir.1983).

■ In addition, had this or any of the other challenged evidence been erroneously admitted, the abundant unchallenged evidence presented to the jury showing defendant's active participation in the conspiracy would have rendered the error harmless. *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946);

*United States v. Bosch,* 584 F.2d 1113, 1117–18 (1st Cir.1978). Defendant was arrested in an automobile with co-conspirator Healy and there were thirty-nine counterfeit checks in the glove compartment. Ten of these checks were printed with the amounts and defendant's fingerprint was found on one of these checks. There was ample unchallenged testimonial evidence showing that he obtained numerous blank counterfeit checks, prepared them by filling them out with false names and amounts, that he drove Gaeta to several banks with the checks and later split the proceeds. The alibi defense offered by him did not cover the entire relevant period of criminal activity, in particular, the weekends when the check cashing was made. Defendant was permitted to hammer on the principal government witnesses' criminal record during cross-examination and closing arguments. It was up to the jury to determine which testimony was credible. The evidence regarding defendant's 1977 arrest and co-conspirators acts and statements were but minor pieces in the government's case which relied mostly on witnesses. Given this overwhelming evidence, it was highly probable that this collateral evidence, if indeed improperly admitted, did not contribute to the verdict. *Bosch,* 584 F.2d at 1117.

■ The final matter raised on appeal is that the sentencing judge's comments on defendant's decision to stand trial raises the possibility that he may have been penalized because he exercised a constitutional right. The following conversation took place in chambers at the start of the second day of trial:

(In chambers)

MR. SHAPIRO: I feel in view of the conversation we just had that a substantial amount of pressure is being placed on this defendant to plead.

THE COURT: By whom, by me?

MR. SHAPIRO: By the Court, yes; and I feel the pressure is being put to me to persuade my client to plead. The way I take the remarks of the Court prior to

going to the record is that if Mr. Crocker is convicted, because, among other things, of the time and expense that the Government is being put to, as well as the Court is being put to, he is going to have to pay a price. The way I read that is that if he exercises his constitutional right to go to trial, he is going to be penalized for that in terms of sentencing and I feel that that puts me under more pressure than I feel is proper and I feel it also infringes upon my client's constitutional right to put the government to its proof.

THE COURT: You may do that. All I'm saying, and I expressed it a little more colloquially than I would have, but all I'm saying is that a defendant who pleads guilty expresses remorse, contrition, indicates a desire to rehabilitate, to sever his connections and is entitled to consideration. On the other hand, it is fanciful for any judge to sit here and say that a defendant, if the evidence shows he is clearly guilty, was clearly guilty before, has taken advantage of every constitutional defense as he has, the motion to suppress was granted, as he has, and considers that he will use a court-appointed lawyer—These are all the realities of the situation and I think that any judge in any court has a right to take those matters into consideration. There is no pressure on you. You don't even have to tell him we had this conversation. If you want to, you are free to do so. You don't have to do a thing about it. All you have to do is try the case and represent your client to the best of your ability.

MR. SHAPIRO: I feel I am obliged to report this to him.

THE COURT: Then tell him and tell him the judge said if this case goes to conviction and the evidence so indicates that he was guilty and clearly guilty, then I will take that into consideration.

*I think imposing upon the time and resources of the Court to try a case which should not be tried is an imposition which deserves consideration when it comes time for me to sentence and I will do so.*

MR. SHAPIRO: What I don't understand is what is a case that shouldn't be tried. Here we are dealing with a case where the government is relying entirely, at least as I understand this case, upon an informant who has a record which dwarfs the defendant's record, who has bargained for his complete liberty, that is, probation—

THE COURT: Those are all jury questions. How about his brother. It's not an informant. This is Charles Crocker, his brother. It is Charles Gaeta; it is William Healey. These are not isolated instances of informants. This is his family.

MR. SHAPIRO: I think it remains to be seen to what extent, if at all, these people are going to testify, and I don't think it's—I think it's much too early to say that this is a case that should not be tried.

THE COURT: That is right.

MR. SHAPIRO: The last representation I had from Mr. Wild was that he had not habed William Healey to testify, although he is on the list; that he had not been habed, according to Mr. Wild. My understanding is he was sent down to Michigan sometime ago. So, whether he testifies or not—

THE COURT: You are absolutely right. It is too early for me to tell. But I will tell you on the record that when the time comes and the jury convicts at that time, it is not too early for me to tell whether or not the case ought to be tried. If at that time I find this has been an exercise for Mr. Crocker, Gerald Crocker, as I said, just an exercise for him, then I think that that should be taken into consideration by me. I don't know what I'll do. I have no idea what the sentence is. I did not express as to what the sentences should be. I said a person who pleads guilty is entitled to consideration. A person does not have, in my judgment, after I've heard all the evidence, a meritorious defense or reason to use the Court's resources and yours and all of ours, ought not to be surprised by a heavier sentence than he would have had

he pleaded guilty. That is the whole subject. That's all there is to it.

It's not a case of my saying: Look, he is going to do 20 years if he doesn't plead guilty today or I'll give him probation if he does plead guilty. I'm telling you I'm going to take into consideration the evidence I hear at this trial.

Now, the motion in limine.... (Emphasis supplied.)

In *United States v. Quejada-Zurique,* 708 F.2d 857 (1st Cir.1983, *cert. denied, Morejon-Ortega v. United States,* 464 U.S. 855, 104 S.Ct. 173, 78 L.Ed.2d 156 (1983), it was recognized as a reality of our system of criminal justice that a defendant who opts to go to trial rather than negotiating a plea runs the risk of a harsher sentence than he would have received by pleading guilty. However, this case does not stand for the proposition that a court may impose a harsher sentence because a defendant chooses to stand trial and the court considers the case unworthy of its time and effort. The Supreme Court has clearly stated that "[t]o punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort...." *Bordenkircher v. Hayes,* 434 U.S. 357, 363, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978). In *United States v. Goodwin,* 457 U.S. 368, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982) the Court noted that, since fear of vindictiveness may unconstitutionally deter a defendant from exercising his legal rights, due process requires that in order for him to be free from apprehension of retaliatory motivation a presumption of vindictiveness arises whenever a detrimental action is taken after his exercise of a right in circumstances in which there is a reasonable likelihood of vindictiveness. The presumption can generally be overcome through objective information justifying the action. The judge's remarks on how the presentation of a frivolous case and the ensuing waste of judicial resources could be factors in determining the sentence to be imposed are sufficient to establish that there was a reasonable likelihood of vindictiveness in the imposition of a harsher sentence on the defendant[2] and the objective reasons argued by the government to justify the sentence were insufficient to overcome the presumption.[3] As we indicated in *Longval v. Meachum,* 693 F.2d 236, 237 (1st Cir.1982), *cert. denied,* 460 U.S. 1098, 103 S.Ct. 1799, 76 L.Ed.2d 364 (1983), "[w]hatever his actual state of mind, or purpose, we regard the judge's mid-trial interjections as susceptible of appearing from the defendant's perspective to be an attempt to coerce him to plead."

The sentence imposed is vacated and the case *remanded* for resentencing by another judge.

---

**2.** Defendant received a three year sentence whereas the co-defendants that pleaded guilty were sentenced to two years each.

**3.** Judge Breyer believes this court's opinion should not be taken to mean that the district court was *in fact* likely to have been vindictive. Rather, the court's warning that it thought the defendant might be "imposing upon the time and resources of the Court," and that it would take this fact into account at sentencing, might cause the defendant to question the judge's impartiality. "Whatever his actual state of mind, or purpose, the judge's mid-trial interjections ... [is] ... susceptible of appearing from the defendant's perspective to be an attempt to coerce him to plead." *Longval v. Meachum,* 693 F.2d at 237.