915 F.2d 1556
 Unpublished Disposition
NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
UNITED STATES, Appellee,
v.
Ralph G. RICHARD, Defendant, Appellant.
 No. 90-1584.
 United States Court of Appeals, First Circuit.
 Aug. 15, 1990.
 
 Appeal from the United States District Court for the District of Massachusetts Andrew A. Caffrey, Senior District Judge.
 William A. Brown on brief, for appellant.
 Wayne A. Budd, United States Attorney, and Paul V. Kelly, Assistant United States Attorney, on brief, for appellee.
 D.Mass.
 AFFIRMED.
 Before BREYER, Chief Judge, and CAMPBELL and CYR, Circuit Judges.
 PER CURIAM.
 
 
 1
 The defendant Ralph Richard was convicted on June 14, 1990 on charges of conspiracy to possess with intent to distribute over 1000 kilograms of marijuana, and of possession of marijuana with intent to distribute, in violation of 21 U.S.C. Secs. 846, 841(a)(1) and 18 U.S.C. Sec. 2. Upon motion of the government following the jury verdict, the district court revoked Richard's bail pending sentencing--an action that Richard now challenges on appeal. He advances two arguments: (1) that the court's decision to detain him, while releasing his eleven codefendants on bail, was constitutionally unjustified, and (2) that the court misapplied the standards of 18 U.S.C. Sec. 3143(a). Based upon "such papers, affidavits, and portions of the record" as the parties have presented, Fed.R.App.P. 9(a), we find no basis for disturbing the district court's decision.
 
 
 2
 Richard was one of fifteen individuals originally indicted, three of whom were (and still are) fugitives. Of the twelve remaining, the government moved for pretrial detention of only three: Ralph and Keith Maling and Richard. The two Maling brothers were said to be the principals in a continuing drug enterprise, while Richard allegedly performed the role of "enforcer." The magistrate declined to order pretrial detention and instead imposed strict conditions on their release. As subsequently modified, the primary release conditions for these three defendants were as follows: (1) Ralph Maling: $1,750,000 bond secured by real estate and cash; house arrest monitored by electronic bracelet; daily telephone reporting to Pretrial Services; (2) Keith Maling: $1,000,000 bond secured by real estate and cash; modified house arrest (permitting outside work during business hours); twice weekly telephone reporting; and (3) Ralph Richard: $100,000 bond secured by real estate; third-party custody of father in Connecticut; twice weekly telephone reporting and once in person.
 
 
 3
 Richard was the sole defendant to go to trial. The other eleven pleaded guilty on May 29, 1990 under a plea agreement with the government. Pursuant to that agreement, the government promised to "recommend a continuation (following the plea hearing) of the present bail status for each defendant pending sentencing". At the subsequent change-of-plea hearing, the district court accepted the government's recommendation and continued the bail status for each defendant, including the Maling brothers.
 
 I.
 
 4
 Richard's constitutional challenge, which he has advanced in only conclusory fashion, is two-pronged. He suggests that, as the only defendant to be detained pending sentencing, he has been denied equal protection. And he contends that, as the only defendant not to plead guilty, he has been penalized for exercising his right to trial and thereby denied due process. Richard raised neither of these arguments below and thus is entitled to a review by this court only for plain error. Fed.R.Crim.P. 52(b); see, e.g., United States v. Bayko, 774 F.2d 516, 517-18 (1st Cir.1985). We find nothing in the record before us indicative of constitutional error, plain or otherwise.
 
 
 5
 The equal protection argument is patently unavailing. At first glance, to be sure, the court's decision to revoke Richard's bail, but not that of the Maling brothers, might be thought inconsistent in light of the relatively more stringent pretrial release conditions imposed on the Malings. Yet Richard was treated differently for the simple reason that he was situated differently. His posttrial bail status was governed by 18 U.S.C. Sec. 3143(a), which as discussed below required him to establish by clear and convincing evidence that he was not likely to flee or pose a danger to the safety of any other person or the community if released. By contrast, the bail status of his codefendants, including the Malings, was governed by the plea agreement, upon acceptance thereof by the district court. The fact that Richard's current bail status is less favorable than that of the Maling brothers is therefore neither surprising nor violative of equal protection.
 
 
 6
 Richard has likewise failed to establish a due process violation stemming from alleged judicial vindictiveness. He attempts to invoke the rule that "[t]o punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort." Bordenkircher v. Hayes, 434 U.S. 357, 363 (1978). This "uncontroversial" principle, United States v. Goodwin, 457 U.S. 368, 372 (1982), would of course proscribe any revocation of bail in retaliation for a defendant's decision to exercise his right to a trial by jury. A defendant raising such an allegation need not necessarily offer direct proof of retaliatory motivation. Given the difficulty of doing so, and to ensure that pursuit of legal rights is not deterred out of mere apprehension of retaliation, the Goodwin Court indicated that a presumption of vindictiveness arises whenever a detrimental action is taken after a defendant exercises a legal right in circumstances "in which a reasonable likelihood of vindictiveness exists." Id. at 373. Such a presumption can be overcome with objective information justifying the action. Id. at 374.
 
 
 7
 Allegations of retaliation for a defendant's exercise of his right to trial have most commonly arisen in the context of sentencing disparities. In Longval v. Meachum, 693 F.2d 236 (1st Cir.1982), cert. denied, 460 U.S. 1098 (1983), for example, we vacated a defendant's sentence in the face of circumstances creating a "reasonable apprehension" that its severity had been "a retaliatory consequence of the defendant's refusal [to plead guilty]." Id. at 238. We emphasized two factors: (1) remarks delivered by the trial judge urging the defendant to plead and implicitly warning of a longer sentence should he refuse, and (2) the disparity between the sentence given to the defendant (thirty-two to forty years) and that imposed on his codefendant who pled guilty (three years). We reached a similar result in United States v. Crocker, 788 F.2d 802 (1st Cir.1986), where the trial judge imposed a longer sentence on the defendant who opted for trial than on those who pled guilty, after having earlier remarked that the presentation of a frivolous case and the ensuing waste of judicial resources could be factors in determining the sentence. Id. at 809. A presumption of vindictiveness can arise, moreover, even in the absence of "unjudicial urgings to plead" by the court. Longval v. Meachum, 693 F.2d at 238. In United States v. Mazzaferro, 865 F.2d 450 (1st Cir.1989), the defendant who went to trial, and who the evidence showed "played a minor role in the crime," received a twenty-year sentence, while his two pleading codefendants, one of whom was the "prime mover" in the crime and had a more extensive prior record than defendant, received ten-year terms. We found these facts sufficient to raise a "strong inference" of retaliation. Id. at 460.
 
 
 8
 No such inference of retaliation, however, is present here. There is no evidence of the trial judge pressuring Richard to plead guilty, let alone threatening him with a bail revocation should he refuse to do so. Nor do the circumstances here otherwise give rise to a "reasonable likelihood of vindictiveness" so as to trigger the Goodwin presumption. As explained, the difference in bail status between Richard and his codefendants stems from the fact that Richard's was governed by 18 U.S.C. Sec. 3143(a), that of his codefendants by the plea agreement. Richard does not suggest (nor do we see how he could) that the court improperly adopted the plea agreement as a means of inducing him to plead. Unlike sentencing, moreover, bail determinations would seem an unlikely vehicle for retaliation given that we conduct an "independent review" of such decisions, albeit one "tempered by deference to the district court's firsthand judgment." United States v. Bayko, 774 F.2d at 520. "The defendant who opts to go to trial rather than negotiating a plea runs the risk of a harsher sentence"--and possibly a more stringent bail determination pending sentencing--"than he would have received by pleading guilty." United States v. Quejada-Zurique, 708 F.2d 857, 861 (1st Cir.), cert. denied, 464 U.S. 855 (1983). Absent some indication of a retaliatory motivation--and we find none here--such harsher treatment does not violate due process. See, e.g., Bordenkircher v. Hayes, 434 U.S. at 364.
 
 II.
 
 9
 Richard's statutory challenge proves equally unavailing. Upon his conviction, the burden shifted to Richard to prove "by clear and convincing evidence that [he] is not likely to flee or pose a danger to the safety of any other person or the community if released." 18 U.S.C. Sec. 3143(a); see also Fed.R.Crim.P. 46(c); Fed.R.App.P. 9(c). Based on our independent review, with deference given to the district court's determination, we agree that Richard has failed to carry this burden.
 
 
 10
 Richard contends he is unlikely to flee for the following reasons. He voluntarily surrendered following the indictment. While free on bail, both in this case and in others, he has faithfully appeared without incident. He has strong ties to the area, including a mother and other family members in Massachusetts and a father in Connecticut. Being indigent, he lacks the financial resources to facilitate flight. And he has no ties to foreign countries. The government emphasizes, in response, that the potential sentence faced by Richard--up to thirty years--creates a strong inducement to flight.[1] It also points to his prior criminal record (a 1978 drug conviction in New Jersey and a 1985 conviction for first degree criminal trespassing in Colorado), and adds that he has "earned thousands of dollars from the drug business." Neither side, curiously, has mentioned where Richard now resides and the length of such residence.
 
 
 11
 We think the government overstates the risk of flight in one respect. Given its promise to recommend a ten-year sentence for Ralph Maling and seven years for his brother Keith, the likelihood of Richard receiving the thirty-year maximum sentence seems remote, particularly in light of the due process cases canvassed above.[2] As such, the appropriateness of revoking bail on the basis of flight risk alone presents, we think, a reasonably close question. Compare, e.g., Truong Dinh Hung v. United States, 439 U.S. 1326 (1978) (opinion of Brennan, J.), with, e.g., United States v. Castiello, 878 F.2d 554 (1st Cir.1989) (per curiam), and United States v. Colon Berrios, 791 F.2d 211 (1st Cir.1986). The appropriateness of doing so on the basis of danger to the community is more clear-cut, so we turn to that criterion.
 
 
 12
 Richard states in this regard simply that he has never endangered the safety of any person or of the community while on bail. The government responds by stressing Richard's role as an "enforcer" for the drug-trafficking enterprise--in which capacity he perpetrated at least one act of violence and a series of related threats. This history of violence, in combination with his active involvement in drug trafficking for over ten years, his criminal record, and his proclaimed disrespect for the law, militates strongly against any finding of nondangerousness. Moreover, it has been held, on the basis of the language and legislative history of the Bail Reform Act, that Congress intended to create a rebuttable presumption equating drug trafficking with danger to the community. See United States v. Strong, 775 F.2d 504, 506-07 (3rd Cir.1985). Richard has fallen well short of rebutting such a presumption or otherwise establishing by clear and convincing evidence that he is not likely to endanger the safety of any other person or the community.
 
 
 13
 For these reasons, the district court's decision is affirmed and the appeal is dismissed.
 
 
 
 [1]
 Since the offenses here were committed prior to November 1, 1987, the federal sentencing guidelines are inapplicable
 
 
 [2]
 In so stating, we of course do not mean to express any opinion as to the propriety of any potential sentence to be imposed on Richard, or otherwise to circumscribe the district court's discretion at sentencing