Laverne WILLIAMS, Appellant,

v.

UNITED STATES, Appellee.

No. 88–216.

District of Columbia Court of Appeals.

Argued Jan. 4, 1990.

Decided March 8, 1990.

J.E. McNeil, Washington, D.C., argued, for appellant. Richard Manning Ricks (Court-appointed), Washington, D.C., was on the brief, for appellant.

Celillianne Green, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John R. Fisher, Elizabeth Trosman, Washington, D.C., and John Dominguez, Asst. U.S. Attys., were on the brief, for appellee.

Before BELSON and SCHWELB, Associate Judges, and REILLY, Senior Judge.

REILLY, Senior Judge:

Laverne Williams, a former nurse at D.C. General Hospital, who having previously pleaded guilty to two counts of an indictment charging illegal possession of a controlled substance, had been given a suspended sentence and placed on probation, subsequently filed a motion for reduction of sentence, appeals from an order denying such motion.

She argues that (1) in determining the original sentence and refusing to reduce it, the court improperly gave weight to a government representation at the sentencing hearing that she was guilty of offenses for which she was never tried, and (2) the

court abused its discretion because it did not consider the damaging impact upon her prospects of professional employment if she were not accorded the relief requested. Appellant also seeks remand to determine if the court's disposition of the matter was influenced by a letter of the prosecutor containing an assertedly false statement. We affirm.

Prior to her arrest, appellant, a licensed practical nurse, had been employed at D.C. General Hospital for six years, and was working in the emergency room of the hospital. Located in this facility is a locked cabinet where prescription drugs are stored. Keys to this cabinet are provided to the nursing staff. Because of the narcotics laws, regulations provided that when a nurse removes a controlled substance like demerol from the cabinet, she must initial and fill out a sheet stating the name of the physician who ordered it and the name of the patient to whom it is, or about to be, administered.

During 1983, a routine audit of the hospital drug records revealed that in the months of June and July of that year, an unusually large amount of demerol had been removed from the emergency room inventory. An examination of the individual withdrawal logs then disclosed that on a number of documents signed by Nurse Williams she had entered the names of non-existent patients and the names of doctors who had never given such authorization. This investigation resulted in her arrest and eventually an indictment charging (1) five counts of furnishing false or fraudulent material information (felonies), D.C. Code § 33–543(a)(4) (1988 Repl.), (2) five counts of theft, D.C.Code §§ 22–3811, 22–3812(b) (1989 Repl.), and (3) five counts of unlawful possession of a controlled substance, D.C.Code § 33–541(c) (1988 Repl.). After extended plea bargaining, appellant was allowed to enter an *Alford* plea to two of the possession counts, in return for which the government agreed not to prosecute her on the other charges.[1]

On July 23, 1985, the court accepted the plea, and sentenced her to a term of impris-

onment for one year on each count to run consecutively. Then over the objection of the government, the court suspended the sentences and placed her on three years' probation.

Some three months later, appellant filed a motion for reduction of sentence under Super.Ct.Crim.R. 35, asking the court to vacate its original sentence and impose a one-year probation term as defined in D.C. Code § 33–541(e)(2) (1988 Repl.). Had the court granted relief under that subsection, it would have made appellant as a first offender, eligible to apply for an order expunging her conviction from the record, restored her to the status she enjoyed before arrest and conviction, and enabled her to answer in the negative without fear of prosecution for perjury or false statement any inquiry as to whether or not she had been convicted of a drug offense. Appellant was particularly anxious to obtain such relief as she had just been fired from a nursing job at Walter Reed Hospital because she had concealed in her application form the fact of her conviction, as well as the circumstances which led to the termination of her services at D.C. General Hospital. The court, however, in a memorandum opinion dated January 15, 1988, denied her motion.

I

Although the government failed to raise any issue of timeliness when it opposed the motion to reduce sentence at the hearing before Judge Moore, it now urges us to dismiss the appeal summarily as the motion was not filed until November 25, 1985, some four days after the 120–day limitation period specified in Super.Ct.Crim.R. 35 had expired. There is no doubt that the 120–day limitation is jurisdictional. Hence, by the time the motion was filed, the trial court no longer had authority to reduce sentence. *See Robinson v. United States*, 454 A.2d 810, 813 n. 6 (D.C.1982).

Notwithstanding, appellant's counsel argues that in the interest of judicial economy, we should consider the appeal on the

---

1. *See North Carolina v. Alford,* 400 U.S. 25, 91    S.Ct. 160, 27 L.Ed.2d 162 (1970).

merits, pointing out that if we dismissed the case on jurisdictional grounds, she could simply file another motion pursuant to Rule 35(b), which provides that a motion to reduce sentence may be filed "not later than 120 days after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal." It appears that counsel has misconstrued the word "appeal" in the context of the rule, for we have held in dealing with a similar post-trial motion, that the rule is referring to a direct appeal from a conviction or sentence. *See Brown v. United States*, 411 A.2d 631, 632 (D.C.1980).

In oral argument, however, appellant's counsel, citing *United States v. Hamid*, 531 A.2d 628, 632 (D.C.1987), where an untimely decision reducing sentence was affirmed under the grant of a writ of error *coram nobis*, argues that under common law such writ may be "allowed without limitation of time." *United States v. Morgan*, 346 U.S. 502, 507, 74 S.Ct. 247, 250, 98 L.Ed. 248 (1954). While *Hamid* is not plainly applicable here, we have decided in order to lay the case before us to rest, to pass upon appellant's objections to the challenged order of the motions court and now proceed to do so.

## II

■ It is, of course, fundamental that appellate review of sentencing is extremely limited. Ordinarily, a sentence which does not exceed the statutory limits or is not imposed for the conviction of an offense which has merged with another conviction must ordinarily be permitted to stand, *e.g., In re L.J.*, 546 A.2d 429, 434 (D.C.1988). Thus, any appellant urging an appellate court to set aside a sentence or to reverse a refusal to reduce sentence is confronted with a heavy burden.

■ Appellant's principal objection to the motions court's denial of relief is that such court abused its discretion and denied the movant's right to due process by "considering the government's proffer of evidence of alleged crimes for which she was

never charged, convicted, nor afforded the opportunity to confront the evidence against her." What appellant is referring to is a paragraph in the memorandum opinion denying the motion, which under the caption "Background" stated that during the two-month period covered by the audit, appellant had removed demerol from the locked cabinet fifty-one times, and that on twenty-eight of these occasions ´in signing the withdrawal entries, she put down the names of fictitious patients and non-authorizing physicians in the log book. This statement by the court was based upon information given it by the prosecutor at the sentencing hearing in the form of a document described as a grand jury exhibit. In arguing that providing such uncorroborated data to the court was improper, appellant points out, *inter alia*, that the bill of indictment returned by the grand jury charged only five instances of such misconduct, and she pleaded guilty only to two of these.

What appellant's brief fails to mention, however, is that it was she who opened up the issue of past practice in making demerol withdrawals. In arguing for leniency in sentencing, counsel contended that she was guilty of nothing but "sloppiness and failure to comply with bookkeeping regulations," asserting that "during this same time [she] signed out controlled substances some 57 times where she filled out the information logs correctly."[2] It was apparently to rebut this depiction of appellant's recordkeeping behavior as ordinarily meticulous that the government in opposing the request for probation drew the attention of the sentencing judge to other derelictions revealed by the audit. If the representation appellant had made to the court was a relevant factor to be taken into account in determining sentence, surely the government was entitled to show that it was inaccurate.

■ In any event, the thesis that the commission of uncharged crimes is an improper factor for sentencing judges to consider, flies in the face of a controlling holding of the Supreme Court, *Williams v. New*

---

2. "Memorandum in Aid of Sentence."

*York,* 337 U.S. 241, 246–47, 69 S.Ct. 1079, 1082–83, 93 L.Ed. 1337 (1949), where a death sentence imposed by a trial judge upon a defendant convicted of felony murder (committed in a burglary) was challenged on the very grounds petitioner is urging. The record showed that in overruling a jury recommendation for life imprisonment, the judge relied on official reports disclosing that the defendant had engaged in brutal and violent conduct on other occasions including some burglaries for which he had not been charged or convicted. In sustaining the sentencing judge, the Supreme Court made an observation that is plainly applicable here:

> In addition to the historical basis for different evidentiary rules governing trial and sentencing procedures there are sound practical reasons for the distinction. In a trial before verdict the issue is whether a defendant is guilty of having engaged in certain criminal conduct of which he has been specifically accused. Rules of evidence have been fashioned for criminal trials which narrowly confine the trial contest to evidence that is strictly relevant to the particular offense charged. These rules rest in part on a necessity to prevent a time-consuming and confusing trial of collateral issues. They were also designed to prevent tribunals concerned solely with the issue of guilt of a particular offense from being influenced to convict for that offense by evidence that the defendant had habitually engaged in other misconduct. A sentencing judge, however, is not confined to the narrow issue of guilt. His task within fixed statutory or constitutional limits is to determine the type and extent of punishment after the issue of guilt has been determined. Highly relevant— if not essential—to his selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics. And modern concepts individualizing punishment have made it all the more necessary that a sentencing judge not be denied an opportunity to obtain pertinent information by a requirement of rigid adherence to restrictive rules of evidence properly applicable to the trial.

*Williams, supra,* 337 U.S. at 246–47, 69 S.Ct. at 1083 (footnote omitted).

Our court reached a similar conclusion in *Johnson v. United States,* 508 A.2d 910 (D.C.1985), where the government dropped certain counts in an indictment after the accused pleaded guilty to offenses charged in other counts, but on sentencing allocution, presented a transcript of grand jury proceedings accusing him of the crimes which were the subject of the dismissed charges. *Id.* at 911. Contrary to appellant's hypothesis, a fair reading of the *Johnson* opinion makes it clear that this case does not stand for the proposition that at a sentencing hearing, the government may present evidence only of crimes enumerated in an indictment. In order to enable the court to appraise the character of the person convicted, any pertinent information is relevant.

■ We also perceive no abuse of discretion in the court's refusal to grant section 33–541(e) relief simply because appellant's prospect of future employment by a hospital would be greatly diminished if the facts concerning her conviction were not excised from her record. Far from ignoring this aspect of the matter, the court did recognize that her employment opportunities might be adversely affected if the original sentence was allowed to stand, but "did not deem them appropriate [*i.e.,* controlling] factors" in its determination in view of the "gravity, nature, and methodology utilized in committing the offenses." As her motion was essentially a plea for leniency, it is well established that a trial court's disposition cannot be set aside in the absence of a showing of " 'arbitrary or capricious action amounting to a gross abuse of discretion.' " *Walden v. United States,* 366 A.2d 1075, 1077 (D.C.1976) (quoting *Taylor v. United States,* 456 F.2d 1101, 1103 (5th Cir.), *cert. denied,* 409 U.S. 856, 93 S.Ct. 137, 34 L.Ed.2d 101 (1972)). Plainly, no such showing was made by appellant here.

Appellant's further contention that the record should be remanded for clarification because of the possibility that the court

might have accepted as true a letter sent by the prosecutor to Walter Reed Hospital, borders on the frivolous.[3] Such letter, written in response to an inquiry from the hospital itself, contained the statement that Nurse Williams "was removed from her position at D.C. General Hospital for theft of narcotics from the emergency room drug locker." Counsel for appellant characterizes this assertion as false,[4] citing a personnel record in the files of D.C. General Hospital to the effect that her services were terminated because of "resignation" and that the reason therefore was "personal." Actually, the assertion was substantially accurate, for appellant's counsel in a paper previously filed in this case represented to the court that his client resigned "at the insistence of the complaining witnesses." As these complainants were the officials of the hospital, the resignation was apparently obtained by the ultimatum of "quit or be fired." We have frequently said in unemployment compensation cases, that a resignation in such circumstances is not voluntary, but amounts to a discharge. *See, e.g., Green v. District of Columbia Department of Employment Services,* 499 A.2d 870, 877 (D.C.1985); *Thomas v. District of Columbia Department of Labor,* 409 A.2d 164, 174 (D.C.1979). We find nothing in the record to support either the characterization of the prosecutor's letter to the hospital as false or the lodging of a subsequent complaint on such ground with Bar Counsel.

*Affirmed.*

---

**3.** In a courteous letter to appellant's counsel, the judge disclaimed that either such letter or the personnel action had any impact upon his decision. Presumably he would say the same thing if the case were remanded for a formal finding.

**4.** Counsel has also drawn the attention of the court to having made the same accusation against the author of the letter, Assistant United States Attorney Dominguez, in a complaint to Bar Counsel.