Milton H. COLES, Appellant,

v.

UNITED STATES, Appellee.

No. 95–CM–896.

District of Columbia Court of Appeals.

Argued June 27, 1996.

Decided Aug. 8, 1996.

Maria L. Alonso–Vazquez, Washington, DC, for appellant.

John R. Fisher, Assistant United States Attorney, with whom Eric H. Holder, Jr., United States Attorney, Roy W. McLeese, III, Assistant United States Attorney, and David Waymire, Student Counsel, were on the brief, for appellee.

Before FARRELL and RUIZ, Associate Judges, and MACK, Senior Judge.

FARRELL, Associate Judge:

A jury found appellant guilty of one count of possessing marijuana. D.C.Code § 33–541(d) (1993). The trial judge sentenced him to one year in prison. The only issue prompting this published opinion is whether remarks made by the judge at sentencing demonstrate that he penalized appellant for exercising his right to stand trial or for his failure to admit responsibility for the offense after trial at a time when his Fifth Amendment privilege was still intact. Although the judge's remarks just before imposing sentence trouble us, we conclude that they provide no ground for resentencing.

## I.

■ We first reject appellant's contention that the police lacked probable cause to arrest him, requiring suppression of the marijuana seized from him following the arrest. Testimony credited by the trial judge established that a police sergeant with nineteen years of police experience watched appellant speak with another person and give that person currency in exchange for a ziplock plastic bag which the latter retrieved from an apparent stash in a nearby tree-box space. "[P]robable cause is a flexible, common-sense standard" that "does not demand any showing that [the officer's belief that he has witnessed criminal behavior] be correct or more likely true than false." *Texas v. Brown,* 460 U.S. 730, 742, 103 S.Ct. 1535, 1543, 75 L.Ed.2d 502 (1983) (plurality opinion). *See also Brinegar v. United States,* 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949) ("In dealing with probable cause, . . . as the very name implies, we deal with probabilities"). While the police officer could not see the contents of the plastic bag, our decisions nonetheless confirm that he had probable cause to believe he had witnessed an exchange of drugs for money. *See, e.g., United States v. Bolden,* 429 A.2d 185, 186 (D.C. 1981); *Tobias v. United States,* 375 A.2d 491, 492–94 (D.C.1977); *Munn v. United States,* 283 A.2d 28, 30–31 (D.C.1971); *Peterkin v. United States,* 281 A.2d 567, 568 (D.C.1971). An experienced officer, familiar with the conventional packaging of drugs and the common stashing of them in places like the tree-box space involved here, could reasonably conclude that the glassine bag was not empty but instead contained a controlled substance.[1]

## II.

At sentencing, after hearing allocution and advising appellant of his right to appeal, the trial judge stated his intention to ignore a 1985 conviction mentioned in the presentence report which appellant was apparently challenging collaterally, then continued as follows:

I never understood why you went to trial in this case, Mr. Coles, you had—your lawyer did the best he could with no defense at all. I was amazed how successfully he was able to even come up with something plausible. If you had come before the Court and said, look, I had a little stuff

---

1. We also reject appellant's argument that the evidence was insufficient to convict him because the government failed to prove that the marijuana allegedly seized from him "followed a guarded trail to the laboratory." Under the principles summarized in *Ford v. United States,* 396 A.2d 191, 194 (D.C.1978), the government established the chain of custody sufficient to permit admission of the marijuana in question. *See also Turney v. United States,* 626 A.2d 872, 874 (D.C. 1993).

on me and I needed a little extra money, I would have had some sympathy for you[;] [2] I don't have any sympathy for you at all. So the Court sentences you to one year.

A one-year prison term was the maximum for appellant's offense.[3] Appellant contends that the judge's remarks reveal an intention to punish him for exercising his constitutional right to stand trial. Alternatively, he argues the judge penalized him for his failure to admit to the drug offense as a condition of leniency at sentencing.

## A.

◼ The line between affording leniency to a defendant who has admitted guilt by pleading guilty and punishing one who has denied his guilt and proceeded to trial is elusive, to say the least. *See Scott v. United States*, 135 U.S.App. D.C. 377, 395, 419 F.2d 264, 282 (1969) (Leventhal, J., concurring in the judgment). *Cf. Roberts v. United States*, 445 U.S. 552, 557 n. 4, 100 S.Ct. 1358, 1362 n. 4, 63 L.Ed.2d 622 (1980) ("We doubt that a principled distinction may be drawn between 'enhancing' the punishment imposed upon the petitioner and denying him the 'leniency' he claims would be appropriate if he had cooperated"). On the one hand, the authority of sentencing judges to ameliorate the sanction when an offender admits his responsibility, including by entry of a plea of guilty, is well recognized. The ABA Standards governing pleas of guilty, for example, deem it "proper for the court to grant ... sentence concessions to defendants who enter a plea of guilty" when "there is substantial evidence to establish that ... the defendant is genuinely contrite and has shown a willingness to assume responsibility for his or her conduct...." ABA Standards for Criminal Justice, Vol. 111, 2d ed., Ch. 14 ("Pleas of

Guilty"), Standard 14–1.8(a)(i). *See* United States Sentencing Guidelines Manual § 3E1.1 (1995 edition).[4] *See also Brady v. United States*, 397 U.S. 742, 753, 90 S.Ct. 1463, 1471, 25 L.Ed.2d 747 (1970) (defendant who pleads guilty "demonstrates by his plea that he is ready and willing to admit his crime and to enter the correctional system in a frame of mind that affords hope for success in rehabilitation"). Implicit in this authority to extend leniency to a defendant who pleads guilty must be the discretion to "withhold[ ] leniency from others who appear less deserving." *United States v. Jones*, 302 U.S.App. D.C. 273, 276, 997 F.2d 1475, 1478 (1993) (en banc), *cert. denied*, 510 U.S. 1065, 114 S.Ct. 741, 126 L.Ed.2d 704 (1994). As the Supreme Court has stated, "*[A]fter trial*, the factors that may have indicated leniency as consideration for [a] guilty plea are no longer present." *Alabama v. Smith*, 490 U.S. 794, 801, 109 S.Ct. 2201, 2206, 104 L.Ed.2d 865 (1989) (emphasis added). *See also United States v. Wilson*, 506 F.2d 1252, 1260 (7th Cir.1974) ("[I]t is within proper bounds for the court to preserve some leeway so that it is able to extend leniency in consideration of the cooperation and at least superficial penitence evidence[d] by one who pleads guilty").

◼ Nevertheless, "[t]here is a line between responding favorably to an individual's sincere expression of remorse, and reacting in a hostile way because of a personal belief in the guilt of one" who insists on putting the government to its proof. *Scott*, 135 U.S.App. D.C. at 395, 419 F.2d at 282 (Leventhal, J., concurring). "The '[a]ugmentation of sentence' based on a defendant's decision to 'stand on [his] right to put the Government to its proof rather than plead guilty' is clearly improper." *United States v. Hutchings*,

---

**2.** This sentence is perplexing as it appears to suggest a recollection by the judge that appellant was the seller in the transaction, when in fact he had been the buyer.

**3.** Indeed, as appellant was convicted for possessing cannabis, a Schedule V controlled substance, a one-year prison term would have been the maximum if he had been convicted of distribution or possession with intent to distribute that substance. *See* D.C.Code § 33–541(a)(2)(D) (1993); *id.* § 33–522(2).

**4.** § 3E1.1 Acceptance of Responsibility

(a) if the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels.

\* \* \* \* \* \*

This adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse. Commentary to § 3E1.1, Application Note 2.

757 F.2d 11, 14 (2d Cir.), *cert. denied,* 472 U.S. 1031, 105 S.Ct. 3511, 87 L.Ed.2d 640 (1985) (quoting *United States v. Araujo,* 539 F.2d 287, 291–92 (2d Cir.1976)). Consequently, a reviewing court must be satisfied that the defendant's sentence "reflect[s] an individuated judgment as to the balance of deterrence and rehabilitation applicable in [the] appellant's case" rather than a categorical "approach of using a maximum sentence for a defendant" who required the government to prove his guilt beyond a reasonable doubt. *Scott,* 135 U.S.App. D.C. at 395, 419 F.2d at 282 (Leventhal, J., concurring).

■ The government asserts that the most natural reading of Judge Murphy's remarks, read in context, is that he was neither adding to appellant's sentence ("punishing" him) nor withholding leniency for his decision to stand trial, but rather was concerned with his *post*-trial failure to provide any reason for the judge to depart downwards (borrowing language from the federal sentencing-guidelines regime) from a "baseline" prison term of one year that was strongly indicated on the record. As the government points out, the prosecutor in allocution urged incarceration because of appellant's record of multiple prior convictions and the fact that he committed the present crime while on parole. Also, the prosecutor noted, the presentence report revealed that appellant had refused to speak at all with the probation officer preparing the report. Appellant's counsel, while asking for a sentence of work release, acknowledged that "there is an extensive recidivistic record." When appellant's turn to speak came, Judge Murphy asked him why he had refused to talk to the probation officer. Appellant replied that he "didn't feel good" at the time and had told the officer he could get any information he desired from the parole officer. The presentence report confirms that appellant had "refused to be interviewed" and instead told the officer to "[t]alk to my parole officer." This did not prevent appellant from asserting to the judge that the report "must not be as accurate as you think" because it did not mention his recent

enrollment in an apparent job-placement program, Project Able.

Against this background of appellant's conceded record of prior convictions, present parole status, and blanket refusal to talk to the probation officer, the government insists that Judge Murphy's remarks quoted above most naturally convey a refusal to extend leniency to a defendant whose pattern of behavior, past and present, justified a maximum sentence and who simply had given the judge no reason to extend "sympathy" by a downward departure. Given the array of information the judge had, the government says, it is *un* natural or at least implausible to infer that the judge, without ever suggesting a lesser sentence might otherwise be called for, was boosting the sentence because of appellant's decision to stand trial. Ultimately we agree with this conclusion, although the judge's language is disturbing. Immediately after expressing puzzlement that appellant had gone to trial and contrasting him with a hypothetical defendant who "had come before the Court" essentially admitting guilt, the judge imposed the maximum sentence. No other explanation accompanied the imposition.[5] A legitimate inference, absent the surrounding circumstances the government cites, is that assessing the maximum prison term expressed the judge's displeasure with appellant's having cost the system a jury trial despite having "no defense at all." In other connections, however, we do not review trial court statements in abstraction from their context, *e.g., Cupp v. Naughten,* 414 U.S. 141, 146–47, 94 S.Ct. 396, 400–01, 38 L.Ed.2d 368 (1973) (jury instructions); and especially here, too precise a focus on the trial judge's statements at sentencing would be inconsistent with the "extremely limited" scope of our review of sentences. *(Laverne) Williams v. United States,* 571 A.2d 212, 214 (D.C.1990). It also would have the unwholesome effect of discouraging a statement of reasons for the imposition of a particular sentence. While the trial judge obviously was dissatisfied with appellant's failure to display acceptance of responsibility at any

---

**5.** We of course do not imply the judge was required to provide an explanation for the sentence imposed. *See* Super. Ct.Crim.R. 32(c) (1996).

time (including his refusal to cooperate with the presentence report writer), it is too strained a reading of the quoted remarks in context to say that the judge was punishing him for the act of standing trial.

## B.

■ Appellant argues, nonetheless, that any consideration of his failure to accept responsibility in the sense of admitting participation in the crime was improper, citing *(James) Williams v. United States,* 293 A.2d 484 (D.C.1972). In *Williams,* we held that it violated a defendant's Fifth Amendment privilege against self-incrimination for the judge to consider in sentencing the defendant's refusal to disclose the source of the narcotics he had been found guilty of possessing. *Id.* at 485–87. Reading *(James) Williams* as broadly as appellant does—to prohibit any consideration of post-trial refusal to accept responsibility—would amount to a sweeping rejection of the principle embodied in both the ABA Standards and the U.S. Sentencing Guidelines, cited *supra,* that a sentencing judge may consider that fact in deciding whether to show leniency. The government suggests, moreover, that *(James) Williams* did not survive the Supreme Court's decision in *Roberts· v. United States, supra,* at least in a case (like this) where appellant did not assert the Fifth Amendment privilege either to the presentence report writer or at sentencing. *See Roberts,* 445 U.S. at 559–60, 100 S.Ct. at 1363–64. We need not decide this issue, however, because appellant's refusal was not merely to tell the report writer his version of the offense; he refused to be interviewed at all. *Williams* does not require that refusal to be ignored. As the government explained at oral argument, appellant could have told the probation officer a good deal about himself (including his job-related efforts with Project Able)[6] even while maintaining his innocence or declining to discuss the crime. The judge had specifically ordered a presentence report although not required to do so in this misde-meanor case. *See* Super. Ct.Crim.R. 32(b)(1). Appellant's complete refusal to cooperate in that process (instead referring the writer to his parole officer) was undoubtedly a factor the judge could weigh in gauging his rehabilitative potential.

■ All told, then, despite troubling implications in the judge's language, we are not convinced that the sentence imposed rested upon improper considerations. The judge's decision to order a presentence report signalled an intent to sentence appellant based upon his background and individual circumstances. Appellant's criminal record and current parole status established a permissible baseline near or at the maximum one year for the conviction, and his post-conviction conduct, including his response to the presentence report writer and allocution at sentencing, failed to provide the judge with a reason to sentence him more leniently.[7]

*Affirmed.*

MACK, Senior Judge, dissenting:

In large measure for reasons apparent in the majority opinion, I would vacate the sentence and remand for resentencing.

I am well aware of the limited extent to which this court may review sentences which are within statutory limits. This does not mean however that the sentencing process is immune from appellate scrutiny. It is well established that this court may review the sentencing process where a trial court has failed altogether to exercise discretion or has applied legally impermissible criteria which undermine the proceedings. *See In re L.J.,* 546 A.2d 429 (D.C.1988). In the instant case, the trial judge applied legally impermissible criteria in the imposition of sentence. This was error requiring resentencing.

The comment of the sentencing court speaks for itself. The judge said he was imposing the maximum sentence of one year because the accused chose to go to trial with no defense "at all," and that if the defendant had come "before the court" and admitted

---

6. The judge, in response to defense counsel's advocacy of work release, noted that the presentence report "says he doesn't work."

7. We reject appellant's suggestion that his sentence violated constitutional requirements of proportionality. *See, e.g., Hutto v. Davis,* 454 U.S. 370, 102 S.Ct. 703, 70 L.Ed.2d 556 (1982).

that he possessed "a little stuff" and "needed a little extra money"[1] the court would have been more lenient.

I cannot read the trial court's comment in this case as being merely "disturbing" or as simply reflecting the court's decision to sentence appellant on the basis of individualized circumstances. I cannot in principle distinguish this comment from that at issue in *Scott v. United States*, 135 U.S.App. D.C. 377, 380, 419 F.2d 264, 267 (1969),[2] where three appellate judges (Chief Judge Bazelon and Judges Wright and Leventhal) unanimously agreed that a defendant must be resentenced when the trial judge had remarked:

> Now the Court didn't believe your story on the stand, the Court believes you deliberately lied in this case. If you had pleaded guilty to this offense, I might have been more lenient with you.

Thus in the instant case, as in *Scott*, the trial court's words reflect a reaction of annoyance because of a personal belief[3] in the guilt of one who insists on putting the government to its proof beyond a reasonable doubt. *Id.* at 395, 419 F.2d at 276; *see United States v. Hutchings*, 757 F.2d 11, 14 (2d Cir.), *cert. denied*, 472 U.S. 1031, 105 S.Ct. 3511, 87 L.Ed.2d 640 (1985).

Moreover, in the instant case, since our concern is with what the trial judge said, we cannot simply infer that the court was basing its decision upon a presentence report; it did not say so. In fact, if we could infer at all, it would be far more "plausible" to infer that the court was not basing its decision on this report since, just prior to explicitly stating its reason for imposing the maximum sentence, it stated its intention to ignore the most serious listing on that report (a conviction

which was under collateral attack). For the same reason, we cannot simply borrow from ABA Standards or United States Sentencing Guidelines that speak of downward adjustments for "Acceptance of Responsibility" with respect to guilty pleas,[4] infer the converse for upward adjustments, and apply this process to confer legitimacy upon sentencing errors. *Cf. United States v. Jones*, 302 U.S.App. D.C. 273, 997 F.2d 1475 (1993) (where the federal court in a hotly contested en banc decision interpreted the Federal Sentencing Guidelines), *cert. denied*, 510 U.S. 1065, 114 S.Ct. 741, 126 L.Ed.2d 704 (1994). As far as District of Columbia law is concerned, the lower and upper limits for incarceration for possession of marijuana are zero and one year. See D.C.Code § 33–541(d) (1993 Repl.). Nowhere in the statute, or case law, are there "baseline" provisions for adjustment, downward or upward.

In *Williams v. United States, supra*, note 2, we found constitutional error where a sentencing judge considered the fact that the defendant had refused to disclose the source of the narcotics he had been found to possess. We vacated the sentence imposed even though it was one half of the statutory maximum. The error in the instant case, where the trial judge explicitly indicated that he was imposing the maximum sentence because the defendant exercised his right to go to trial is just as egregious as that in *Williams*. Moreover, the error here is exacerbated by the court's indication that it was punishing a seller rather than a buyer—thus relying upon inaccurate information. *In re L.J., supra*, 546 A.2d at 434. The majority cannot justifiably simply dismiss *Williams, supra*, by reference to ABA Standards and United States Sentencing Guidelines.

---

1. The majority notes that this comment is perplexing. It is more than perplexing since it indicates that the court was imposing a sentence on a faulty recollection of the facts and the charge.

2. See *M.A.P. v. Ryan*, 285 A.2d 310, 312 (D.C. 1971), with respect to the precedent we are required to follow. *See also Williams v. United States*, 293 A.2d 484 (D.C.1972).

3. In the context of the instant case, the reference to "I never understood why you went to trial" and the personal "amazement" as to the success

of the defense lawyer as being able to come up with even "something plausible" add to the depth and intensity of the personal reaction.

4. United States Sentencing Guidelines Manual § 3E1.1 (1995) ("Manual"). Note that, were the United States Guidelines applicable here, the sentencing range would have been two to eight months, even if appellant did not receive a downward adjustment for "acceptance of responsibility." *Id.* at §§ 2D2.1(a)(3); 4A1.1; and Grid at p. 272.

In short, the majority here, having recognized the fact that our jurisdiction to review sentencing is limited to errors of law, is in fact disturbed by such errors, but declines to vacate the sentence. In so doing, despite its disavowal, it has looked not to what the court said, but to what the prosecutor and the probation report said. In point of fact, by its reasoning, what is said is less important than what could have been said.[5] In other words, there was no error because an error might have been avoided if the trial court had said nothing or had said more.

I would vacate the sentence and remand for resentencing.

---

5. The majority's reasoning ignores the substantial support for a lesser sentence that could be found in appellant's successful completion of prior probationary terms, as well as the fact that his offense was possession of less than one gram of marijuana.