Bobby THORNE, Appellant,

v.

UNITED STATES, Appellee.

No. 12–CM–101.

District of Columbia Court of Appeals.

Decided May 16, 2012.
Opinion Issued June 28, 2012.

Shannon Timmann, Student Attorney (No. 12581), and Cassandra Snyder, Supervising Attorney, were on appellant's motion for summary reversal.

Ronald C. Machen Jr., United States Attorney, and Roy W. McLeese III, David C. Rybicki, and Ann K.H. Simon, Assistant United States Attorneys, were on appellee's opposition to the motion for summary reversal.

Before GLICKMAN and BLACKBURNE–RIGSBY, Associate Judges, and REID, Senior Judge.

GLICKMAN, Associate Judge:

In a non-jury trial, appellant Bobby Thorne was found guilty of possession of heroin, a misdemeanor. The judge sentenced him to a prison term of 180 days. Thorne appealed and moved for summary reversal of his sentence and for re-sentencing by another judge, on the ground that the trial judge unconstitutionally sentenced him more severely because, through counsel, he had exercised his right to cross-examine the government chemist at trial. The government opposed this relief but, acknowledging what it characterized as "ambiguity" in the trial judge's statements, suggested that we remand the record to permit her to clarify the basis of the sentence she imposed.

By an order entered on May 16, 2012, this court granted Thorne's motion. Concluding that "[i]n view of the judge's comments, there is a reasonable likelihood that she punished appellant for invoking his Sixth Amendment right of confrontation," [1] we vacated Thorne's sentence and remanded the case to the Superior Court with instructions that it be re-assigned without delay to a different judge for re-sentencing. Our order stated that we would issue a more detailed opinion explaining our decision at a later date.

This is that opinion.

## I.  Factual Background

Thorne was charged by information with possession of a controlled substance, which a Drug Enforcement Administration ("DEA") chemist had quantified and identified as heroin.[2] At trial, Thorne was represented by a law student practicing under attorney supervision pursuant to this court's Student Practice Rule.[3] The defense, as articulated by counsel in her opening statement, was that "someone else" had possessed the alleged heroin and an "unreliable" witness had identified Thorne by mistake. Just before the chemist then took the stand as the first govern-

---

1.  *Thorne v. United States,* No. 12–CM–101, 2012 D.C.App. LEXIS 276, at *2 (D.C. May 23, 2012).

2.  The information also charged Thorne with possession of an open container of alcohol ("POCA") and possession of drug paraphernalia. The government no-papered the POCA count before trial, and the trial judge acquitted Thorne of the paraphernalia charge.

3.  D.C.App. R. 48(a)(1).

ment witness, the judge inquired whether the defense was "insisting on the chemist in this case?" When defense counsel answered in the affirmative, the judge asked whether there was a dispute about the identity of the drugs. Counsel responded that "[w]e need to just verify the procedures and make sure everything went accordingly. And, in addition, we want testimony as to the purity of the drugs, the amount of the drugs." The prosecutor interjected that this data was "contained in the DEA–7 report" (the chemist's written report, which the defense had received). Noting that it was the defendant's "right to . . . ask for the chemist," the judge then stated, "I do take all these things into account . . . . in a case where there's not a dispute as to what the drugs are." [4]

At sentencing, the judge revealed what she meant by that remark. In his allocution, the prosecutor asked the judge for a sentence of 180 days of incarceration, with eighty days suspended, in view of Thorne's "extensive criminal history of narcotics-related convictions" [5] and "his unwillingness to accept responsibility for his crimes today." [6] Defense counsel asked for time served and probation because Thorne was receiving treatment and counseling for his drug addiction, was working well with his parole officer (who had placed him in a "halfway back program"), and was employed part-time.[7] After listening to the

parties' allocutions, the judge addressed appellant as follows (emphasis added):

All right. Well, I do give a lot of credit for acceptance of responsibility. I can't give that in this case. *And I do take into account the way the case was trialed—tried. Calling—I mean, it is your right to call the chemist, but in a case where there's no real dispute, I mean, to the extent I would give any credit, I can't give that credit. I mean, I do take all that into account, and I take into account—*

Defense counsel immediately objected to the judge's statement that "calling the chemist" was something she would "take into account" at sentencing. "As his counsel," the student practitioner explained, "that was my strategic decision to do that." To that, the judge responded (emphasis added):

Right. Well, you have to live with the consequence of your—that's what I was trying to tell you. *You have to live with the consequences of your strategic decision.* All of this, this does not happen in a vacuum and *I take all of that into account when I impose sentence. How a case is tried—*

Counsel again objected, pointing out that appellant had a right to cross-examine the chemist. The judge then reiterated that appellant's exercise of that right had sentencing "consequences" (emphasis added):

---

**4.** The chemist testified that he found the substance allegedly possessed by Thorne to contain .006 grams of heroin. On cross-examination, he agreed that this was "a relative[ly] small amount" of the drug in a "relatively small package" and testified that tetracosane was added to the substance in the DEA laboratory to serve as an internal standard during the gas chromatography quantitative analysis.

**5.** The prosecutor cited Thorne's multiple convictions in 1991 for distribution and attempted distribution of cocaine, for some of which he was still under parole supervision; his 2003 conviction for attempted possession

with intent to distribute cocaine; and his 2009 conviction for possession of cocaine.

**6.** The prosecutor did not elaborate on what he meant by Thorne's unwillingness to accept responsibility; we presume he meant that Thorne had not acknowledged his guilt.

**7.** Thorne addressed the judge as well. He said he had been "off the streets" and "successfully testing negative for drugs" in the two-and-a-half months he had been in the drug program and was about to enter a "project empowerment program."

He absolutely does. And I'm not—I'm not challenging your right. What I'm saying to you is though that I do give credit for acceptance of responsibility, and I can't give it. Under my own kind of standards, I'm not going to give it in a case where—I mean, I have to distinguish. I give credit for acceptance of responsibility when people plead before trial rather than go to trial and *even within the trial—I give some credit when—when things are not—are challenged that they don't have to be. And so your trial decisions have consequences.*

Defense counsel then explained that by cross-examining the chemist, she had sought to highlight the small amount of heroin and the "important fact" that (as she had believed) tetracosane had been found in (rather than added to) the sample when it was tested.[8] "All right," the judge responded, and then, without mentioning any of the other factors raised by the parties in their allocutions, she sentenced Thorne to 180 days in prison, none of it suspended. This was the maximum period of incarceration provided by law for Thorne's offense.[9]

## II. Discussion

■ ■ Certain fundamental principles guided our decision to reverse the sentence in this case. A convicted defendant has a due process right to "a fair sentencing process—one in which the court goes through a rational procedure of selecting a sentence based on relevant considerations and accurate information."[10] For the sentencing process to be fair and rational, the "punishment must be tailored to [the defendant's] personal responsibility and moral guilt,"[11] not imposed on the basis of irrelevant criteria or actions for which the defendant is not responsible. In addition, "while an individual certainly may be penalized for violating the law, he just as certainly may not be punished for exercising a protected statutory or constitutional right."[12] "To punish a person because he has done what the law plainly allows him to do is a due process violation 'of the most basic sort.'"[13] Finally, "[w]ith regard to the exercise of the rights of an accused, due process of law requires that even the appearance of vindictiveness must be absent from judicial proceedings."[14] Because "[m]otives are complex and difficult to prove,"[15] it is not always necessary to demonstrate actual vindictiveness to establish a due process violation. Where "action detrimental to the defendant has been taken after the exercise of a legal right" under circumstances showing "a reasonable likelihood of vindictiveness," an improper vindictive motive will be presumed unless it is overcome by "objective information in the record justifying" the action.[16]

Thorne claims the trial judge denied him due process by enhancing his sentence because his defense counsel insisted on cross-

8. In other words, we infer, one theory of the cross-examination was that the sample might have been contaminated before the chemist analyzed it.

9. *See* D.C.Code § 48–904.01(d)(1) (2011 Supp.).

10. *United States ex rel. Welch v. Lane,* 738 F.2d 863, 865 (7th Cir.1984).

11. *Enmund v. Florida,* 458 U.S. 782, 801, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982).

12. *United States v. Goodwin,* 457 U.S. 368, 372, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982).

13. *Id.* (quoting *Bordenkircher v. Hayes,* 434 U.S. 357, 363, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978)).

14. *United States v. Schiller,* 424 A.2d 51, 54 (D.C.1980).

15. *Goodwin,* 457 U.S. at 373, 102 S.Ct. 2485.

16. *Id.* at 373–74, 102 S.Ct. 2485.

examining the DEA chemist. In so doing, Thorne argues, the judge impermissibly based his sentence on an irrelevant consideration and punished him for exercising his Sixth Amendment right of confrontation. As Thorne asserts fundamental legal errors in the sentencing process, our review is de novo.[17] In conducting that review, we "must be satisfied that the defendant's sentence 'reflect[s] an individuated judgment as to the balance of deterrence and rehabilitation applicable in [his] case' rather than a categorical 'approach of using a maximum [or an increased] sentence for a defendant' who required the government to prove his guilt beyond a reasonable doubt." [18]

■ We hold that the sentencing process went awry in this case for the reasons Thorne states. The infirmities we perceive in Thorne's sentencing stemmed from the judge's apparent misunderstanding of the concept of acceptance of responsibility. Her announced policy of giving credit for acceptance of responsibility depending on the defendant's "trial decisions" ("the way the case was tried," and whether "things [were] challenged that . . . [did not] have to be") is a serious misapplication of the concept. As we explained in Coles v. United States,[19] a defendant's acknowledgment of guilt, contrition, willingness to reform, and efforts to make amends are relevant and permissible considerations in sentencing.[20] A sentencing judge appropriately may grant leniency to a defendant who, in such ways, has accepted responsibility for his wrongdoing, and

hence the judge may decline to be lenient if the defendant has failed to admit his guilt and accept responsibility.[21] The rationale for granting leniency in exchange for a defendant's admission of wrongdoing is that the defendant has earned "a reduction from a sentencing norm ascertained independent of the procedure by which guilt is ascertained. A sentence imposed upon a defendant who stands trial is that norm; it is not an enhancement above the norm as a cost of standing trial." [22]

Accordingly, a defendant may forfeit the opportunity to receive a credit at sentencing for acceptance of responsibility if he chooses to stand trial. But once the defendant has made that choice, his strategic and tactical decisions at trial (including his decisions about cross-examining prosecution witnesses) have nothing to do with whether he has accepted responsibility for his wrongdoing. Acceptance of responsibility is shown by admitting guilt, apologizing, and trying to reform and make amends; it is not shown, nor is it disproved or undermined, by the defendant's trial strategies and tactics or the zeal and effectiveness with which he pursues them. Therefore, sentencing a defendant on the basis of his "trial decisions"—whether he engaged in or refrained from "unnecessary" cross-examination, for example—is not justifiable on the theory that credit may be given or withheld for acceptance of responsibility (and it serves no other legitimate purpose of sentencing).[23]

■ On the contrary, in Coles we emphasized that while a judge is permitted to

---

**17.** United States v. Rivera, 448 F.3d 82, 84 (1st Cir.2006).

**18.** Coles v. United States, 682 A.2d 167, 170 (D.C.1996) (quoting Scott v. United States, 135 U.S.App.D.C. 377, 395, 419 F.2d 264, 282 (1969) (Leventhal, J., concurring in the judgment)).

**19.** 682 A.2d 167 (D.C.1996).

**20.** Id. at 169.

**21.** Id.

**22.** United States v. Cruz, 977 F.2d 732, 734 (2d Cir.1992).

**23.** Lest our statements be misunderstood, we wish to make clear that a sentencing enhancement may be appropriate when the judge finds that a defendant perpetuated his wrong-

withhold leniency from a defendant who opts to go to trial, it is " 'clearly improper' " for the judge to increase a defendant's sentence because he " 'put the Government to its proof.' "[24] This distinction "is the 'only rule that recognizes the reality of the criminal justice system while protecting the integrity of that system.' "[25] In some cases, the distinction between legitimately denying a sentencing credit and improperly augmenting a sentence may be difficult to apply, but not where the judge imposes a harsher sentence for trial decisions that have no bearing on the question of acceptance of responsibility. Punishing a defendant for exercising his constitutional rights at trial is "patently unconstitutional."[26]

Beyond that, it is pertinent to the present case to mention another, complementary reason why upping a defendant's sentence because the judge disapproves of his strategic or tactical decisions at trial is violative of due process. Trial decisions such as whether to cross-examine a witness typically are made by the lawyer, not the client:

> Except for certain specific decisions, the client is not the final arbiter as to the conduct of the defense. "In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered,

whether to waive jury trial, and whether client will testify." DISTRICT OF COLUMBIA RULES ON PROFESSIONAL CONDUCT 1.2(a). With those exceptions, "the lawyer has—and must have—full authority to manage the conduct of the trial," *Taylor v. Illinois*, 484 U.S. 400, 418 [108 S.Ct. 646, 98 L.Ed.2d 798] (1988), and so, after appropriate consultation, "strategic and tactical decisions are the exclusive province of the defense counsel." *Jones v. Barnes*, 463 U.S. 745, 753 n. 6 [103 S.Ct. 3308, 77 L.Ed.2d 987] (1983).[27]

If the defendant does not make or control his counsel's strategic and tactical decisions at trial, those decisions can have no rational relationship to the defendant's personal responsibility or any other proper sentencing consideration. Imposing a punitive sentence because the judge considers defense counsel over-zealous is therefore not an appropriate exercise of sentencing discretion. As Thorne contends, "such a sentencing practice would create a deeply problematic ·incentive for defense counsel to be less than zealous, as required by the ethical rules, or even Constitutionally deficient in representing criminal defendants during the course of a trial."[28]

In the present case, Thorne had a Sixth Amendment right to insist on subjecting the DEA chemist to cross-examination at trial.[29] If it was legitimate for the govern-

---

doing by obstructing justice at trial, for example by intimidating witnesses or knowingly presenting false testimony. *See id.,* 977 F.2d at 734.

**24.** *Coles,* 682 A.2d at 169 (quoting *United States v. Hutchings,* 757 F.2d 11, 14 (2d Cir. 1985)).

**25.** *United States v. Whitten,* 610 F.3d 168, 195 (2d Cir.2010) (quoting *Mallette v. Scully,* 752 F.2d 26, 31 (2d Cir.1984)).

**26.** *North Carolina v. Pearce,* 395 U.S. 711, 724, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) (internal quotation marks omitted).

**27.** *Kuhn v. United States,* 900 A.2d 691, 700 (D.C.2006).

**28.** Appellant's Motion for Summary Reversal and Remand for Resentencing Before Another Superior Court Judge at 12 n. 12.

**29.** *See Melendez–Diaz v. Massachusetts,* 557 U.S. 305, 129 S.Ct. 2527, 2532, 174 L.Ed.2d 314 (2009) ("In short, under our decision in *Crawford* [*v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) ] the analysts' affidavits were testimonial statements, and the analysts were 'witnesses' for purposes of the Sixth Amendment. Absent a showing

ment to rely on the chemist's opinion to meet its burden of proving that Thorne possessed a measurable quantity of heroin, it was equally legitimate for the defense to test the validity of that opinion through cross-examination. This was so even if the cross-examination conducted by Thorne's counsel was ineffectual, and even though the judge may have been concerned by "the time- and resource-consuming decision 'to call the chemist' ... 'where' ... 'there's no real dispute [about the nature, purity, or quantity of the charged drugs]." [30] The fact is that "[s]erious deficiencies have been found in the forensic evidence used in criminal trials." [31] Confrontation, which is "designed to weed out not only the fraudulent analyst, but the incompetent one as well," is "one means of assuring accurate forensic analysis." [32] We cannot reverently repeat Wigmore's famous dictum that cross-examination "is beyond any doubt the greatest legal engine ever invented for the discovery of truth," [33] and in the next breath condemn and penalize a defendant for using that engine.

By reiterating that she would "take into account" Thorne's (actually, his counsel's) insistence on cross-examining the chemist, and that this decision would "have consequences" for him, the trial judge signaled that she was going to impose a more severe sentence *because* Thorne exercised his constitutional right of confrontation.

When the judge explained that "even within the trial—I give some credit when ... things are not ... challenged that ... don't have to be," the judge likewise conveyed an intent to give Thorne a heavier sentence because he had insisted on challenging the chemist's analysis. Moreover, the judge linked the duration of Thorne's sentence to "his" decision to "call" the chemist even though she was informed, and there was no dispute, that it was Thorne's counsel who made that decision. The judge's sentence of incarceration for 180 days, the maximum allowed by law, was almost twice what the prosecutor had sought.

In opposing Thorne's motion for summary reversal, the government suggested that we remand the record to the trial judge so that she could "more fully articulate the basis for appellant's sentence." [34] The government argued that "[a]lthough appellant's long criminal record and his status as a parolee on multiple drug felonies at the time of this crime furnished Judge Anderson with ample reason to impose the maximum sentence, her failure to mention these or any other considerations as affirmatively justifying his sentence creates an ambiguity that should be clarified." [35] We were not persuaded by this argument, and we declined to invite the judge to "clarify" the basis for her sentence, because the judge said that the defense decision to cross-examine the chem-

---

that the analysts were unavailable to testify at trial *and* that petitioner had a prior opportunity to cross-examine them, petitioner was entitled to 'be confronted with' the analysts at trial."); *Thomas v. United States*, 914 A.2d 1, 19 (D.C.2006) ("In order for the prosecution to introduce the chemist's report in evidence without calling the chemist to testify, the record must show a constitutionally valid waiver by the defendant of his confrontation right.").

**30.** Appellee's Opposition to Appellant's Motion for Summary Reversal ("Appellee's Opposition") at 7 n. 4 (quoting the trial judge's

statements at sentencing). It was, of course, the government that "call[ed] the chemist," not Thorne.

**31.** *Melendez–Diaz*, 129 S.Ct. at 2537.

**32.** *Id.* at 2536–37.

**33.** 5 Wigmore, Evidence § 1367 at 32 (Chadbourn rev.. 1974).

**34.** Appellee's Opposition at 9.

**35.** *Id.*

ist made a difference to the sentence she imposed. That other, legitimate reasons cited by the government theoretically could have justified the same sentence is therefore irrelevant.

The judge's pronouncements in this case were remarkably similar to those made by the district judge during the trial in *United States v. Crocker.*[36] Observing that the defendant had "taken advantage of every constitutional defense," the district judge declared that he would "take those matters into consideration" at sentencing if the evidence showed the defendant to be "clearly guilty."[37] "I think," the judge elaborated, "[that] imposing upon the time and resources of the Court to try a case which should not be tried is an imposition which deserves consideration when it comes time for me to sentence and I will do so.... A person [who] does not have, in my judgment, after I've heard all the evidence, a meritorious defense or reason to use the Court's resources and yours and all of ours, ought not to be surprised by a heavier sentence than he would have had he pleaded guilty."[38]

The court of appeals condemned these comments, rejecting "the proposition that a court may impose a harsher sentence because a defendant chooses to stand trial and the court considers the case unworthy of its time and effort."[39] Regardless of the trial judge's "actual state of mind, or purpose," said the court, his "remarks on how the presentation of a frivolous case and the ensuing waste of judicial resources could be factors in determining the sentence to be imposed are sufficient to estab-

lish that there was a reasonable likelihood of vindictiveness in the imposition of a harsher sentence on the defendant."[40] The court vacated the sentence and remanded the case for re-sentencing by another judge.[41]

The United States Court of Appeals for the Second Circuit dealt with a comparable situation in *United States v. Cruz.*[42] At the beginning of trial in that case, the district judge "bluntly" (in the words of the appellate court) "told the defendant of the risk of enhanced punishment he might face by exercising his right to have his guilt determined at a trial," declaring:

I'm the kind of a judge where you get a fair trial. There is no doubt about it in my mind. But once you're convicted of a crime, I hit hard.... [I]f I find that after the trial that you didn't have a defense at all, you're going to get the maximum, because you're playing games with me.... If you have a good defense, and if you really believe that you're not guilty, don't plead. But if you are, don't play games, please.[43]

Despite this admonishment, the defendant went to trial. He was convicted, and the judge sentenced him near the top of the guideline range. On appeal, "the Government, recognizing the infirmity in the sentence arising from the District Judge's pretrial remarks, moved to remand for resentencing and noted that it would not object to resentencing before a different judge."[44] The Second Circuit directed exactly that remedy, holding that the district judge's "remarks created an unacceptable

**36.** 788 F.2d 802 (1st Cir.1986).

**37.** *Id.* at 808.

**38.** *Id.* at 808–09.

**39.** *Id.* at 809.

**40.** *Id.* (internal quotation marks omitted).

**41.** *Id.*

**42.** 977 F.2d 732 (2d Cir.1992).

**43.** *Id.* at 733 (brackets and ellipses in the original).

**44.** *Id.*

risk that the sentence was impermissibly enhanced above an otherwise appropriate sentencing norm to penalize the defendant for exercising his constitutional right to stand trial." [45]

We cited *Crocker* and *Cruz* in granting Thorne's motion for summary reversal of his sentence. In that motion, Thorne requested that we direct his re-sentencing to be before a different judge. Following the lead of *Crocker* and *Cruz*, as well as of this court's decision in *McPhaul v. United States*,[46] we granted that request as well; for notwithstanding our confidence in the conscientiousness and integrity of the trial judge, in deciding whether further proceedings in a case should be conducted by a different judge, our primary concern must be to "preserve the appearance of justice" as well as its reality.[47]

---

45. *Id.* at 734.

46. 452 A.2d 371, 374 (D.C.1982) (remanding for re-sentencing before a new judge after finding that the trial court had relied on "inappropriate" considerations in sentencing that "could well raise constitutional questions").

47. *See In re D.E.,* 991 A.2d 1205, 1214 (D.C. 2010) ("[T]hree principal factors to consider in determining whether further proceedings should be conducted before a different judge [are]: '(1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.'" (quoting *United States v. Robin,* 553 F.2d 8, 10 (2d Cir.1977) (en banc))).